UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION,<br><br>                           Plaintiff,<br><br>   v.<br><br>BRIAN H. STOKER,<br><br>                          Defendant. | Case No. 11-CIV-7388 (JSR) |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT BRIAN STOKER'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT ..........................................................................................................................1

    A. The Complaint Fails to Allege a Violation of Section 17(a)(2) ...............................1

        1. The Complaint fails to allege that Stoker personally obtained money or property as a result of the alleged omissions. .............................1

        2. The Complaint fails to allege that Stoker had ultimate authority over, or was personally and primarily responsible for, the alleged misleading statements ....................................................................4

            a. Following *Janus*, the Complaint must allege that Stoker had ultimate authority over the alleged misleading statements ...........................................................................................4

            b. Even under pre-*Janus* law, the Complaint must allege that Stoker was personally and primarily responsible for the alleged misleading statements ...........................................5

            c. The Complaint fails under either the *Janus* standard or pre-*Janus* law. ..................................................................................6

    B. The Complaint Fails to Allege a Violation of Section 17(a)(3) ...............................7

        1. The Complaint must allege fraudulent or deceptive acts distinct from the alleged omissions. ........................................................................7

        2. The SEC's new claims of fraudulent conduct have no basis in the Complaint and are contrary to SEC statements elsewhere. ...................8

III. CONCLUSION ....................................................................................................................10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662, 1949 (2009)................................................................................................6

*In the Matter of Flannery*,
  2011 WL 5130058 (SEC Release No. 438, Administrative Proceedings No. 3-
  14081 Oct. 28, 2011) ......................................................................................................4

*In re Alstrom SA Sec. Litig.*,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005).............................................................................7

*Janus Capital Group, Inc. v. First Derivative Traders*,
  131 S. Ct. 2296 (2011)................................................................................................4,5

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005)............................................................................................7

*PIMCO Advisors Fund Mgmt. LLC*,
  341 F. Supp. 2d 454 (S.D.N.Y. 2004).............................................................................5

*Porcelli v. United States*,
  404 F.3d 157 (2d Cir. 2005)............................................................................................2

*Rombach v. Chang*,
  355 F.3d 164, 174 (2d Cir. 2004)..................................................................................10

*SEC v. Burns*,
  No. 84-0454, 1986 WL 36318 (S.D. Cal. Feb. 19, 1986)...............................................1

*SEC v. Citigroup Global Markets, Inc.*,
  No. 11-CV-7387, Transcript (S.D.N.Y. Nov. 9, 2011).....................................................9

*SEC v. Daifotis*,
  No. C 11-00137 WHA, 2011 WL 2183314 (N.D. Cal. June 6, 2011).........................1, 2

*SEC v. Daifotis*,
  No. C 11-00137 WHA, 2011 WL 3295139 (N.D. Cal. Aug. 1, 2011) ............................5

*SEC v. Delphi Corp.*,
  No. 06-14891, 2008 WL 4539519 (E.D. Mich. Oct. 8, 2006).........................................2

*SEC v. Espuelas*,
  579 F. Supp. 2d 461 (S.D.N.Y. 2008); ...........................................................................4

*SEC v. Forman*,
  No. 07-11151-RWZ, 2010 WL 2367372 (D. Mass. June 9, 2010)..............................1,3

*SEC v. Geswein*,
  No. 5:10CV1235, 2011 WL 4565861 (N.D. Ohio Sept. 29, 2011); ...............................5

*SEC v. Glantz*,
  No. 94 Civ. 5737 (CSH), 1995 WL 562180 (S.D.N.Y. Sept. 20, 1995).......................1,3

# TABLE OF AUTHORITIES
## (cont'd)

**Page(s)**

*SEC v. Kelly*,
 ___ F. Supp. 2d ___, No. 08 civ 4612, 2011 WL 4431161 (S.D.N.Y. Sept. 22, 2011); ..................................................................................................................4,5,7,10

*SEC v. KPMG, LLP*,
 412 F. Supp. 2d 349 (S.D.N.Y. 2006)..........................................................................4,5,6

*SEC v. Lucent Techs., Inc.*,
 610 F. Supp. 2d 342 (D. N.J. 2009) ...................................................................................7

*SEC v. Mercury Interactive, LLC*,
 No. 5:07-civ-02822-WHA, 2011 WL 5871020 (N.D. Cal. Nov. 22, 2011); .......................5

*SEC v. Monarch Funding Corp.*,
 192 F.3d 295 (2d Cir. 1999)........................................................................................2, 4,6

*SEC v. Steffelin*,
 No. 11-CV-04204, Transcript (S.D.N.Y. Oct. 25, 2011).....................................................7

*SEC v. Tambone*,
 550 F.3d 106 (1st Cir. 2008), reh'g en banc granted and opinion withdrawn,
 573 F.3d 54 (2009), and opinion reinstated in part, 597 F.3d 1249 (2010)...................3,5,6

*SEC v. Wolfson*,
 539 F.3d 1249 (10th Cir. 2008) .....................................................................................4,6

*United States v. Crispo*,
 306 F.3d 71 (2d Cir. 2002).................................................................................................2

*United States v. Naftalin*,
 441 U.S. 768, 773-74 (1979) ..............................................................................................7

**Statutes**

15 United States Code § 77................................................................................................1,2,4

## I. INTRODUCTION

The Securities and Exchange Commission's Opposition to Brian Stoker's Motion to Dismiss attempts to divert the Court from the relevant law and the allegations found in the Complaint. Throughout its Opposition, the SEC fails to address the plain language of Section 17 and on-point case law interpreting its provisions. Instead, the SEC attempts to redirect the Court's attention to authority outside Section 17 and cases contrary to established Second Circuit law. The SEC's Opposition likewise fails to explain how the facts that are actually alleged in its Complaint state a claim under Section 17(a)(2) or (a)(3). Rather, the SEC attempts to save its case by making assertions that have no basis in the Complaint and that contradict positions the SEC has taken elsewhere. Indeed, in its attempt to salvage its flawed Section 17(a)(3) claim, the SEC changes its theory of the alleged fraud altogether. The Court should disregard these tactics and dismiss this case in its entirety.

## II. ARGUMENT

### A. The Complaint Fails to Allege a Violation of Section 17(a)(2).

#### 1. The Complaint fails to allege that Stoker personally obtained money or property as a result of the alleged omissions.

The SEC cannot escape the clear law that it must allege that Stoker personally obtained money or property. Section 17(a)(2) provides that "[i]t shall be unlawful for any person … to obtain money or property by means of any untrue statement … or any omission to state a material fact…." 15 U.S.C. § 77q(a). Case law in the Southern District of New York and elsewhere holds that this language requires that the SEC "allege that *defendant* actually obtained money or property by means of the untrue statements." *SEC v. Glantz*, No. 94 Civ. 5737 (CSH), 1995 WL 562180, at *5 (S.D.N.Y. Sept. 20, 1995) (emphasis added); *see also SEC v. Daifotis*, No. C 11-00137 WHA, 2011 WL 2183314, at *10 (N.D. Cal. June 6, 2011); *SEC v. Forman,* No. 07-11151-RWZ, 2010 WL 2367372, at *8 (D. Mass. June 9, 2010); *SEC v. Burns*, No. 84-0454, 1986 WL 36318, at *3-4 (S.D. Cal. Feb. 19, 1986). The SEC fails to address these cases in its Opposition.

1

Instead, the SEC asks the Court to ignore the language of Section 17(a)(2) and the on-point case law cited above, and to analogize from the mail fraud statute, 18 U.S.C. § 1341, to hold that "literal acquisition of money or property by the defendant should not be required" under Section 17(a)(2). Opp'n at 11. The Court should not adopt the SEC's novel approach. First, it is contrary to the plain language of Section 17(a)(2) and the case law cited above. Second, the SEC fails to cite a single authority that interprets Section 17(a)(2) in light of the mail fraud statute, much less any authority that adopts the interpretation of Section 17(a)(2) it proposes.[1] It is not surprising that the SEC could not find any cases interpreting Section 17 in light of the mail fraud statute. Whether or not Section 17 was originally "modeled after" the mail-fraud statute, the statutes contain different language, and courts have interpreted the statutes as having different elements. *Compare SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999), *with Porcelli v. United States*, 404 F.3d 157, 162 (2d Cir. 2005). Accordingly, the Court should reject the SEC's unsupported interpretation of Section 17(a)(2).

The Court should likewise reject the SEC's argument that it is sufficient to allege that "Stoker obtained money or property for his employer," Citigroup. Opp'n at 13. Again, this interpretation contradicts the plain language of the statute, which makes it "unlawful for any *person* in the offer or sale of any securities … *to obtain money or property*…." 15 U.S.C. § 77q(a) (emphasis added). "The plain meaning of this text requires that the *defendant* himself be alleged to have obtained money or property." *Daifotis*, 2011 WL 2183314, at *10 (emphasis in original). The only case cited by the SEC in support of its approach, *SEC v. Delphi Corp.*, No. 06-14891, 2008 WL 4539519 (E.D. Mich. Oct. 8, 2006), cites no authority for its holding, contains no analysis, and has never been cited by another court on this point. The SEC must allege that Stoker personally obtained money or property by means of the alleged omissions.

---

[1] The SEC cites *United States v. Crispo*, 306 F.3d 71 (2d Cir. 2002), but *Crispo* involved neither Section 17 nor the mail fraud statute. The absence of any authority interpreting Section 17(a) in light of the mail fraud statute contrasts with the established law in the Second Circuit holding that Section 17(a) and Rule 10b-5 are to be read co-extensively, notwithstanding differences in their statutory language. *See, e.g.*, *Monarch Funding Corp*, 192 F.3d at 308.

2

To meet this requirement, the SEC must also allege a causal connection between the alleged omissions from the Class V III pitch book and offering circular and Stoker's compensation, the only money he is alleged to have personally obtained. *Forman*, 2010 WL 2367372, at *8; *Glantz*, 1995 WL 562180, at *5. For example, in *Forman*, where the SEC alleged that the defendant prepared financial statements that improperly recognized certain revenue, the Court granted summary judgment for the defendant because there was no evidence of a causal connection between the company's financial performance and his bonus. *Forman*, 2010 WL 2367372, at *8. On the other hand, in *SEC v. Tambone*, 550 F.3d 106 (1st Cir. 2008), *reh'g en banc granted and opinion withdrawn*, 573 F.3d 54 (2009), *and opinion reinstated in part*, 597 F.3d 1249 (2010) (en banc), the Court reversed the dismissal of a Section 17(a)(2) claim where the SEC alleged that the defendants used prospectuses containing false statements to sell certain funds and alleged that "both defendants' compensation *depended significantly* on their sale of [the] funds." 550 F.3d at 129 (emphasis added). Thus, the Complaint must tie the alleged misrepresentations to the money or property.[2]

There is no allegation that ties the alleged omissions from the pitch book and offering circular to Stoker's 2006 or 2007 compensation. The SEC cannot point to any allegation that Stoker's 2006 or 2007 compensation would have been any different had the Class V III pitch book or offering circular disclosed the allegedly omitted material facts. Class V III did not close until February 2007, and the SEC does not dispute that Stoker's 2007 compensation would have been the same regardless of the language in the Class V III marketing materials and regardless of whether Class V III closed at all. See Mem. at 13 n.3.

Finally, it is not enough, as the SEC claims, that "the Complaint clearly alleges that Stoker was compensated by Citigroup for his work as a structurer." Opp'n at 15. The SEC's overly broad reading of Section 17(a)(2) is not consistent with the language of the statute, which

---

[2] Stoker does not argue that the law requires that the defendant obtain money or property from a sale of a security. *See* Opp'n at 14-15. Nor does Stoker argue that Section 17(a)(2) requires "that the defendant obtain funds directly from the victims of the fraud." *Id*. at 14. Rather, the law is that there must be a causal relationship between the misrepresentation or omission and the money or property personally obtained by the defendant.

requires that the defendant actually "obtain money or property *by means of any untrue statement ... or any omission to state a material fact ....*" 15 U.S.C. § 77q(a)(2) (emphasis added). The SEC cites no case which adopts its expansive reading of Section 17(a)(2) and no case that holds that the relevant issue under the statute is simply whether the defendant's "fraudulent activities … were within the scope of the employment for which he was compensated…." Opp'n at 15.[3]

> 2. **The Complaint fails to allege that Stoker had ultimate authority over, or was personally and primarily responsible for, the alleged misleading statements.**
>
>> a. **Following *Janus*, the Complaint must allege that Stoker had ultimate authority over the alleged misleading statements.**

Under *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011), only a person with "ultimate authority over the statement" may be held liable for a violation of Section 17(a)(2). *SEC v. Kelly*, ___ F. Supp. 2d ___, No. 08 civ 4612, 2011 WL 4431161, at *1 (S.D.N.Y. Sept. 22, 2011); *In the Matter of Flannery*, 2011 WL 5130058, at *34 (SEC Release No. 438, Administrative Proceedings No. 3-14081 Oct. 28, 2011). In its Opposition the SEC does not address the reasoning in *Kelly* and does not even mention the decision in *Flannery*.

The SEC's arguments against the application of *Janus* to Section 17(a)(2) are unavailing. First, it is true that *Janus* interpreted Rule 10b-5(b), which, unlike Section 17(a)(2), uses the term "make." However, the Second Circuit has consistently interpreted the elements of Section 17(a)(2) and Rule 10b-5(b) as "[e]ssentially the same," *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999), and thus Courts in this Circuit have repeatedly held that Section 17(a)(2) requires a defendant to "make" a statement, *see, e.g., SEC v. Espuelas*, 579 F. Supp. 2d 461, 471 (S.D.N.Y. 2008); *SEC v. KPMG, LLP*, 412 F. Supp. 2d 349, 376 (S.D.N.Y. 2006). It would thus be inconsistent to "require that a defendant have made the misleading statement to be

---

[3] *SEC v. Wolfson*, 539 F.3d 1249 (10th Cir. 2008), cited by the SEC, does not hold that it is sufficient to allege that that defendant was paid for "his participation in solicitation efforts." In *Wolfson*, the individual defendant was paid a consulting fee by a public company for preparing financial statements that omitted material information. *Id*. at 1253 n.7  However, the defendant also profited by selling stock in the company prior to the disclosure of the material information. *Id*. at 1253 n.7, 1264. Thus, unlike Stoker, the defendant profited directly from the misrepresentations for which he was responsible by selling his stock at an inflated price.

4

liable under subsection (b) of Rule 10b-5, but not under subsection (2) of Section 17(a)." *Kelly*, 2011 WL 4431161, at *5.

Second, the SEC's claim that "the policy concerns underlying *Janus* are absent here" is wrong. The Court's foremost policy concern was the risk of eroding the line between primary and secondary liability: "If persons or entities without control over the content of a statement could be considered primary violators who 'made' the statement, then aiders and abettors would be almost nonexistent." *Janus*, 131 S. Ct. at 2302. This concern with establishing a "clean line" between primary and secondary liability, *id*. at 2302 n.6, applies with equal, if not greater, force in the context of Section 17(a)(2), where the SEC need only prove negligence.

Finally, as noted in Stoker's opening Memorandum, none of the district court cases denying the application of *Janus* to Section 17 upon which the SEC relies considered the controlling Second Circuit law that interprets Rule 10b-5 and Section 17 coextensively.[4] *See* Mem. at 14 n.5. Thus, the Court should not rely on their holdings.

> b. **Even under pre-*Janus* law, the Complaint must allege that Stoker was personally and primarily responsible for the alleged misleading statements.**

Even if the Court does not apply the *Janus* standard to the SEC's Section 17(a)(2) claim, pre-*Janus* law in the Second Circuit requires the SEC to allege that Stoker was "in fact … personally and primarily responsible for issuance of misleading communications." *SEC v. PIMCO Advisors Fund Mgmt. LLC*, 341 F. Supp. 2d 454, 466-67 (S.D.N.Y. 2004); *see also KPMG*, 412 F. Supp. 2d at 375. The SEC cites no authority from the Second Circuit to the contrary and cites no such authority affirming liability under Section 17(a)(2) for a defendant's mere "assist[ance] in the preparation of," or "use[]" of, a false statement. *See* Opp'n at 16.

The SEC cites two out-of-circuit, pre-*Janus* decisions for more expansive readings of Section 17(a)(2). The SEC cites *Tambone* for the proposition that liability under Section 17(a)(2) "attaches so long as the statement is *used* 'to obtain money or property.'" Opp'n at 20

---

[4] *SEC v. Mercury Interactive, LLC*, No. 5:07-civ-02822-WHA, 2011 WL 5871020 (N.D. Cal. Nov. 22, 2011); *SEC v. Geswein*, No. 5:10CV1235, 2011 WL 4565861, at *2 (N.D. Ohio Sept. 29, 2011); *SEC v. Daifotis*, No. C 11-00137 WHA, 2011 WL 3295139 (N.D. Cal. Aug. 1, 2011).

(emphasis in original).  The First Circuit's holding in *Tambone* that Section 17(a)(2) is broader than Rule 10b-5, however, cannot be reconciled with the well-established Second Circuit rule that the two are to be interpreted as coextensive.  *See, e.g., Monarch Funding Corp.*, 192 F.3d at 308.  The SEC cites the Tenth Circuit's decision in *Wolfson* for the proposition that "[a] defendant may also be primarily liable under Section 17(a)(2) if he assists in the preparation of false statements used by [sic] to offer or sell securities."  Opp'n at 16.  The Court in *Wolfson*, however, did not hold that a defendant can be liable under Section 17(a)(2) for merely assisting another with making a misleading statement.  In fact, the Tenth Circuit expressly analyzed Rule 10b-5 and 17(a) under the standard set out in *KPMG*.  *Wolfson*, 539 F.3d at 1261.

         **c.**       **The Complaint fails under either the *Janus* standard or pre-*Janus* law.**

Whether the Court applies the *Janus* standard or the pre-*Janus* law set out in *PIMCO* and *KPMG*, the Complaint fails to allege that Stoker was legally responsible for the pitch book, the offering circular, or the allegedly misleading statements therein.

The SEC does not dispute that conclusory statements are not sufficient.  Thus, the SEC's claim that "Stoker was responsible for the accuracy and completeness of both the offering circular and the pitch book," Opp'n at 17, is unavailing.  Alleging that Stoker was "responsible" is nothing more than a "formulaic recitation of the elements" of a Section 17(a)(2) violation and is thus not sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 1949 (2009).

The Complaint lacks sufficient factual allegations that Stoker had ultimate authority over, or was personally and primarily responsible for, the alleged misleading statements contained in the pitch book.  The SEC does not contest that the statements regarding CSAC contained in the section of the pitch book titled "Manager" were CSAC's responsibility and not Stoker's.  The SEC thus appears to concede that the only relevant "portion of the pitch book under Stoker's control" was the "risk factors" section.  Opp'n at 17.  The Complaint, however, does not allege that Stoker had ultimate authority over the "risk factors" section.  Indeed, the Complaint does not allege that Stoker drafted the "risk factors" section or that he approved, reviewed, or even read that section.  Compl. ¶ 48-49.

The SEC also fails to identify allegations in the Complaint that show that Stoker was responsible for the alleged misleading statements in the offering circular. The SEC does not dispute that the allegedly misleading statements regarding CSAC in the Complaint "were drafted by CSAC," Compl. ¶ 54, or that CSAC explicitly accepted responsibility for the risk factors regarding its role, *see* Mem. at 19. SEC now contends that Stoker "had ultimate responsibility for the offering circular" and "personally determined the provisions to be included in it," but cannot cite to any such allegations in the Complaint. Opp'n at 18.

**B.     The Complaint Fails to Allege a Violation of Section 17(a)(3).**

       **1.     The Complaint must allege fraudulent or deceptive acts distinct from the alleged omissions.**

It is well-established in the Second Circuit that to state a claim under Section 17(a)(3), the plaintiff must allege "the performance of an inherently deceptive act that is distinct from an alleged misstatement." *Kelly*, ___ F. Supp. 2d ___, 2011 WL 4431161, at *3. This rule applies in SEC enforcement actions, *see id.* at *3; *SEC v. Lucent Techs., Inc.*, 610 F. Supp. 2d 342, 360 (D. N.J. 2009); *see also* Little Decl., Ex. E at 35:23-24 (*SEC v. Steffelin*, No. 11-CV-04204, Transcript (S.D.N.Y. Oct. 25, 2011)), and in private litigation, *see Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177 (2d Cir. 2005); *In re Alstrom SA Sec. Litig.*, 406 F. Supp. 2d 433, 475 (S.D.N.Y. 2005). The SEC cites no authority that holds to the contrary.[5] Indeed, the SEC appears to concede that liability may arise under both Sections 17(a)(2) and (a)(3) only "where it is alleged that the defendants 'undertook a deceptive scheme or course of conduct that went beyond the misrepresentations.'" Opp'n at 22 (quoting *Alstrom*, 406 F. Supp. 2d at 475).

---

[5] In *United States v. Naftalin*, 441 U.S. 768, 773-74 (1979), the Court held that the phrase "upon the purchaser" in Section 17(a)(3) should not be read to limit the reach of Section 17(a)(1). Thus, *Naftalin* does not support the SEC's argument. In fact, the reasoning in *Naftalin* that "each subsection [of Section 17] proscribes a distinct category of misconduct," *id.* at 774, supports Stoker's position that the SEC must allege more than omissions to state a claim under Section 17(a)(3). Similarly, *Affiliated Ute Citizens of Utah v. United States* did not address the scope of Section 17(a)(3). Instead, *Affiliated Ute* held that in certain Rule 10b-5 cases, "positive proof of reliance is not a prerequisite to recovery." 406 U.S. 128, 153-54 (1972).

7

### 2. The SEC's new claims of fraudulent conduct have no basis in the Complaint and are contrary to SEC statements elsewhere.

The SEC fails to identify any allegation from the Complaint that Stoker engaged in fraudulent or deceptive acts beyond his alleged failure to ensure the accuracy of the Class V III pitch book and offering circular.  Instead, in a transparent attempt to rescue its Complaint in the face of the law cited above, the SEC makes up new accusations of fraud that have no basis in the Complaint and that directly contradict prior representations by the SEC.

The only violation of Section 17 alleged in the Complaint is that Stoker negligently failed to ensure that Citigroup disclosed its alleged role in selecting the Class V III reference assets and its financial position in Class V III:

- "The marketing materials … *did not disclose* Citigroup's role in selecting the assets … and … Citigroup's short position on those assets";

- "Citigroup … used Class V III as a proprietary trade … *without disclosing* its role in the selection of assets or the short position it took ….";

- "The pitch book and offering circular were *materially misleading* ….";

- "Stoker did not ensure that the offering materials *accurately described* Citigroup's role in selecting the assets, [its] intention to use Class V III as a proprietary trade, and [its] shorting of $500 million of assets in Class V III";

- "Stoker did nothing to determine whether the statements about the asset selection process, or about CSAC's role in selecting the assets, *were accurate*";

- "[Stoker] made no attempt to obtain information … or otherwise take action to *ensure that the disclosure documents were accurate* concerning Citigroup's interest in Class V III";

- "Stoker also knew or should have known that the use of Class V III for [the purpose of taking a short position on certain reference assets] *without fully disclosing that position* would operate as a fraud upon the investors …."

Compl. ¶¶ 2, 3, 59, 4, 51, 52, 64 (emphasis added).  Likewise, the SEC's Complaint against Citigroup alleges that "[b]y engaging in the conduct described herein, Citigroup … violated Sections 17(a)(2) and (3) … by negligently misrepresenting key deal terms, namely the process by which the investment portfolio was selected and Citigroup's financial interest in the transaction."  Citigroup Compl. ¶ 6.

8

Moreover, before Stoker filed this Motion, the SEC expressly disclaimed any allegation of intentional fraudulent conduct.  In November, the SEC represented to the Court that "based on the facts and circumstances, including our interview of witnesses, our review of hundreds of thousands, if not millions, of pages of documents, [and] the numerous instances of testimony we took…, *we concluded that … there was not sufficient evidence to support a finding of scienter*."  Little Decl., Ex. D at 24:19-25 (*SEC v. Citigroup Global Markets, Inc*., No. 11-CV-7387, Transcript (S.D.N.Y. Nov. 9, 2011)) (emphasis added).

Despite these clear allegations of a negligent failure to disclose, the SEC now asserts in its Opposition that "Class V III was a transaction that operated as a fraud on investors" separate from the alleged omissions from the pitch book and offering circular.  Opp'n at 23.  This new theory has no basis in the SEC's complaints against Stoker or Citigroup.  The SEC claims that Class V III was "*intended* by Citigroup as a vehicle to position it to profit from the downturn in the United States housing market," *id*. at 24 (emphasis added), yet neither complaint actually alleges that Citigroup—much less Stoker—had such an intent.  The paragraph of the Complaint cited by the SEC mentions neither Citigroup nor Stoker.  *See id*. (citing Compl. ¶ 20).  The SEC also claims in its Opposition that Citigroup sought "to include in the [Class V III] transaction assets that it *believed had a strong likelihood of failure*," *id*. (emphasis added), but the SEC does not cite any allegation in either Complaint to support this assertion.  In fact, there is no allegation that Citigroup or Stoker believed that the Class V III reference assets would fail.

The SEC's new claim of a fraudulent scheme also contradicts representations it made to this Court.  The SEC's claim in its Opposition that "Stoker played an active role in [a] fraudulent transaction separate from … his responsibility for and use of the material misrepresentations and omissions," Opp'n at 23, is inconsistent with the SEC's statements to this Court in November that "[a] violation requires … identifying an individual who both had the information and was involved in the disclosure process" and that it filed suit against Stoker because he "had reason to know what was occurring, and yet went ahead with the disclosure process without making sure that full disclosure was made in the marketing materials."  Little Decl., Ex. D at 25:21-26:2.

9

Having represented that it brought this action against Stoker solely because of his "involve[ment] in the disclosure process," the SEC cannot now contend that its claim against Stoker involves anything more than the alleged omissions.

Finally, the SEC's new claim that Stoker personally engaged in fraudulent conduct distinct from his role in the alleged omissions is not grounded in the Complaint and is incompatible with its theory of the case. The SEC now posits that Stoker hid Citigroup's intent to use Class V III as a "proprietary trade" from CSAC.[6] However, there is no allegation in the Complaint that CSAC was deceived or defrauded. To the contrary, the SEC's theory depends on CSAC's alleged complicity in permitting Citigroup to exercise undisclosed influence over selection of the Class V III reference assets. *See* Compl. ¶¶ 37, 60, 63. In fact, in the SEC administrative proceeding against CSAC, the SEC claimed that "CSAC understood that Citigroup was seeking to short assets into Class V [III] either for itself or for its customers … and thus that Citigroup was representing economic incentives potentially adverse to those of Class V III and its investors" but "allowed Citigroup to exercise significant influence over the composition of Class V III's investment portfolio. Supplemental Declaration of Jan Nielsen Little, Ex. F at 2 (Order Instituting Administrative and Cease-and-Desist Orders, *In re Credit Suisse Alternative Capital LLC*, Admin. Proceeding No. 3-14594 (SEC Oct. 19, 2011)). The SEC thus fails to allege that Stoker participated in any separate deceptive course of conduct.

### III.   CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

---

[6] The SEC also suggests that Stoker engaged in fraudulent conduct distinct from the alleged omissions by telling a potential investor that Class V III was a "top-of-the-line CDO squared." Opp'n at 25. This allegation, however, involves nothing more than an alleged failure to disclose facts regarding the Class V III asset selection process; it is thus not "an inherently deceptive act that is distinct from [the] alleged misstatement[s]." *Kelly*, 2011 WL 4431161, at *3. Moreover, such an "expression[] of puffery and corporate optimism do[es] not give rise to securities violations." *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004).

Dated: January 13, 2012          Respectfully submitted,

                                             By:   */s/ Jan Nielsen Little*
                                                   JOHN W. KEKER (*pro hac vice*)
                                                   JAN NIELSEN LITTLE (*pro hac vice*)
                                                   STEVEN K. TAYLOR (*pro hac vice*)
                                                   BROOK DOOLEY (*pro hac vice*)
                                                   KEKER & VAN NEST LLP
                                                 633 Battery Street
                                                 San Francisco, CA  94111-1809
                                                 Telephone:  (415) 391-5400
                                                 Facsimile:   (415) 397-7188
                                                 Email:     jkeker@kvn.com
                                                 Email:     jlittle@kvn.com
                                                 Email:     staylor@kvn.com
                                                 Email:     bdooley@kvn.com

                                                 Attorneys for Defendant
                                                 BRIAN H. STOKER