| | |
|---|---|
| | relevant Fixed Rate Payer Calculation Period. |
| | For purposes hereof, the outstanding principal amount on the first day of the Fixed Rate Payer Calculation Period shall be the principal amount outstanding on such day after giving effect to any payments on such day in respect of principal on the Reference Obligation whether or not scheduled. |
| Fixed Rate Payer Calculation Amount: | The Reference Obligation Notional Amount. |
| Fixed Amount: | The product of (i) the Reference Obligation Notional Amount, (ii) the Fixed Rate and (iii) the Fixed Rate Day Count Fraction; provided that if the aggregate principal amount of the Reference Obligation is reduced on any day other than a Fixed Rate Payer Payment Date, the Fixed Amount shall be an amount equal to the product of (i) the weighted average Reference Obligation Notional Amount for such Fixed Rate Payer Calculation Period, (ii) the Fixed Rate and (iii) the Fixed Rate Day Count Fraction. No Fixed Amount shall be payable with respect to any period after the earlier of (i) the Early Termination Date and (ii) the Scheduled Termination Date. |
| Fixed Rate Payer Payment Dates: | The 28th calendar day of each February, May, August and November, beginning in May 2007. |
| Fixed Rate: | 0.20% (20.0 basis points) per annum |
| Fixed Rate Day Count Fraction: | Actual/360. |

3. <u>Floating Payment</u>:

| | |
|---|---|
| Floating Rate Payer Calculation Amount: | As of the Cash Settlement Date, the Shortfall, except to the extent attributable to any present or future withholding taxes, or other, similar charges imposed by any governmental or taxing authority (including interest and penalties in respect of such withholding taxes or other, similar charges) imposed on payments under the Reference Obligation to a holder of a principal amount of the Reference Obligation equal to the Relevant Notional Amount, such holder having the relevant tax characteristics of the Buyer with respect to withholding taxes or other, similar charges, including whether the Buyer has provided applicable and effective tax forms to the Reference Entity, the Trustee or the relevant paying agent for reduced or no withholding to the extent such form(s) are required to be provided for such reduction or elimination of withholding. |
| Conditions to Settlement: | Credit Event Notice, which notice must be in writing. |

**EXECUTION COPY**

Notifying Party: Buyer

Notice of Physical Settlement: Not applicable.

Notice of Publicly Available Information: Applicable, provided that (i) such notice must be in writing, and (ii) the relevant Credit Event Notice is given.

Public Source(s): In addition to the Public Sources specified in Section 3.7 of the Credit Derivatives Definitions, a notice from the Trustee for the Reference Obligation, Standard and Poor's Ratings Group ("S&P") and Moody's Investor Services, Inc. ("Moody's").

Specified Number: Two, provided however, that the Specified Number shall be one if the Publicly Available Information consists of information received from the Trustee for the Reference Obligation.

Notice of Shortfall, as defined in Section 11(E) of this Confirmation

Credit Events: The following Credit Events shall apply to this Transaction:

Failure to Pay, as defined in Section 11(C) of this Confirmation.

Grace Period Extension: Inapplicable

Payment Requirement: USD 1

Obligations:

Obligation Category: Reference Obligation Only.

Multiple Exercise: Notwithstanding any provisions herein, or any provisions in the Credit Derivatives Definitions, the Conditions to Settlement may be satisfied on any number of occasions, but only once in relation to each and every Shortfall. Sections 1.7 and 3.1 of the Credit Derivatives Definitions shall be construed accordingly.

4. Settlement Terms:

Settlement Method: Cash Settlement

Settlement Currency: USD

Terms Relating to Cash Settlement: The terms Final Price, Valuation Method, Market Value, Quotation, Valuation Date, Quotation Method, Full Quotation, Weighted Average Quotation, Quotation Amount, Minimum Quotation Amount, Valuation Time, Dealer and Representative



Confidential Treatment Requested by Ambac AMB-V_00501180

Amount shall be inapplicable to this Transaction.

Cash Settlement Date: Three Business Days after the Event Determination Date. For the avoidance of doubt, there may be more than one Cash Settlement Date, but only one Cash Settlement Date in respect of each and every Shortfall.

Cash Settlement Amount: The Floating Rate Payer Calculation Amount.

Shortfall:

(a) With respect to any Payment Date prior to the Scheduled Termination Date, (i) the amount of accrued interest due and payable on such Payment Date in respect of the Reference Obligation with a principal amount outstanding equal to the Reference Obligation Notional Amount minus (ii) the amount of such accrued interest, if any, paid by or on behalf of the Reference Entities or, if applicable, any guarantor or insurer, in respect of the Reference Obligation with a principal amount outstanding equal to the Reference Obligation Notional Amount on such Payment Date, after giving effect to any applicable grace period.

(b) With respect to the date that is the earlier of (i) the Scheduled Termination Date or (ii) the date on which the assets designated to fund the Reference Obligation have been disposed of (whether in accordance with the Transaction Documents or otherwise and whether pursuant to sale or liquidation or otherwise) and all proceeds of those assets have been fully distributed (whether in accordance with the Transaction Documents or otherwise and whether so distributed to holders of the Reference Obligation or any other person), (x) the amount of principal or accrued interest due and payable on such date in respect of the Reference Obligation with a principal amount outstanding equal to the Reference Obligation Notional Amount minus (y) the amount of such principal or accrued interest, if any, paid by or on behalf of the Reference Entities or, if applicable, any guarantor or insurer, in respect of the Reference Obligation with a principal amount outstanding equal to the Reference Obligation Notional Amount on such date, after giving effect to any applicable grace period.



Confidential Treatment Requested by Ambac AMB-V_00501181

EXECUTION COPY

5. Notice and Account Details:

Contact and Account Details:

| | |
|---|---|
| Buyer: | BNP Paribas<br>Attention: Credit Derivatives Documentation<br>Telephone No.: + 44 207 595 2592/4621<br>Facsimile No.: +44 207 595 5692 |
| Buyer Settlements: | Account details: USD<br><br>For account of: BNP Paribas<br>Account Bank: BNP Paribas, New York<br>Account no: 20079442500132<br>SWIFT: BNPAUS3N |
| Seller: | Ambac Credit Products, LLC<br>One State Street Plaza<br>New York, NY 10004<br>Attn: Financial Control<br>Tel: (212) 668-0340<br>Fax: (212) 208-3428<br><br>Copy to:<br><br>Attn: Structured Finance and Credit Derivatives<br>Fax: (212) 208-3113 |
| Seller Settlements: | BK OF NYC<br>ABA# 021000018<br>ACCT: GLA 111565<br>FFC: AMBAC CREDIT PRODUCTS LLC<br>ACCT: 003924<br>ATTN: Class V Funding III, Ltd. |

6. Notice and Voting Provisions

In relation to this Transaction:

Provided that (i) no Event of Default (as defined in the Agreement) has occurred and is continuing where Seller is the sole Defaulting Party; and (ii) performance would not contravene any law, rule or regulation:

(a) Buyer hereby agrees that it shall not, without the prior written consent of Seller (which consent shall not be unreasonably withheld) take any action to modify, abrogate, vary or compromise the rights of the holders of any Reference Obligation, or consent to any of the foregoing, with respect to:

(i) the timing and/or circumstances of redemption of such Reference Obligation at maturity or otherwise;



NYA 830688.8

(ii) the timing and/or determination of the amount of interest, principal or other amounts payable in respect of such Reference Obligation from time to time; or

(iii) any other action that would otherwise be subject to any vote, approval, consent or other action of any holder of a Reference Obligation or to resolution by any of the holders of such Reference Obligation in accordance with the terms and conditions thereof (whether or not such action would also require the consent of other persons).

(b) Buyer hereby undertakes to procure that all of the holders of a principal amount of such Reference Obligation equal to the Reference Obligation Notional Amount of such Reference Obligation act in accordance with the timely instructions of Seller with respect to the holders' rights (as described in Section 6(a) of this Confirmation) under or in respect of such Reference Obligation.

7. Reports

Buyer agrees to use reasonable efforts with respect to the Reference Obligation to either (i) obtain and to provide Seller and Seller's Credit Support Provider with copies of trustee's or noteholder reports or notices relating to the Reference Obligation, on an ongoing basis promptly after receipt thereof by Buyer or (ii) procure the delivery thereof by the Reference Entity or any trustee or administrator to Seller. Buyer further agrees to make requests to the Trustee, as Seller may from time to time direct, for any information any Noteholder or any Designated Protection Provider (each as defined in the Indenture) is entitled to request from the Trustee under the terms of the Indenture.

8. Adjustment of Calculation Agent Determinations

To the extent that a Trustee furnishes any Monthly Reports or Note Valuation Reports correcting information contained in previously issued Monthly Reports or Note Valuation Reports and such corrections impact calculations pursuant to this Transaction, the calculations relevant to the Transaction shall be adjusted retroactively by the Calculation Agent to reflect the corrected information (provided that, for the avoidance of doubt, no amounts in respect of interest shall be payable by either party and provided that the Calculation Agent in performing the calculations pursuant to this paragraph will assume that no interest has accrued on any adjusted amount), and the Calculation Agent shall promptly notify both parties of any corrected payments required by either party. Any required corrected payments shall be made within five Business Days of the day on which adjusted payments are made in respect of the Reference Obligation.

9. Recovered Amounts

If, on or after any Event Determination Date, an amount (whether interest, principal or other amount in respect of the Reference Obligation) is disbursed by the Trustee on behalf of the Reference Entity in respect of the Reference Obligation in full or partial payment of a Shortfall (a "Recovered Amount"), Buyer shall, no later than two Business Days following the date of disbursement of such Recovered Amount, pay to Seller an amount equal to the portion of the Recovered Amount attributable to the Relevant Notional Amount as of the applicable Event Determination Date.

After the Termination Date, Buyer shall continue to make payment of Recovered Amounts to Seller, in the same manner and subject to the same limitations as provided in this Confirmation as if the Termination Date had not occurred; provided, that Buyer's obligation to continue to make these payments shall cease on the day that is 30 days after the date on which the liquidation and distribution of the assets held by the Reference Entity to fund the Reference Obligation is completed.



Confidential Treatment Requested by Ambac 

10. Holding of Reference Obligation

Buyer shall not at any time have any obligation to hold any part of the Reference Obligation.

11. Additional Agreements Regarding Credit Derivatives Definitions

(A) Section 1.8 of the Definitions is hereby deleted in its entirety and the following is hereby substituted therefor: "'Event Determination Date' means the first date on which all Conditions to Settlement are satisfied." Notwithstanding any provisions herein, or any provisions of the Credit Derivatives Definitions, an Event Determination Date may occur on more than one occasion, but only once in relation to each and every Shortfall.

(B) Section 1.18 of the Credit Derivatives Definitions shall not apply to the Transaction.

(C) Section 4.5 of the Credit Derivatives Definitions is hereby deleted in its entirety and the following is hereby substituted therefor:

"Failure to Pay" means, after the expiration of any applicable Grace Period (after the satisfaction of any conditions precedent to the commencement of such Grace Period),

(a) the failure by a Reference Entity to make, when and where due, any payments of accrued interest in an aggregate amount of not less than the Payment Requirement under one or more Reference Obligations, in accordance with the terms of such Reference Obligations at the time of such failure; or

(b) a failure to pay in full the principal amount of the Reference Obligations at the earlier of:

(i) the Maturity Date of such Reference Obligations; and

(ii) the date on which all of the assets designated to fund the Reference Obligation have been disposed of (whether in accordance with the Transaction Documents or otherwise and whether pursuant to sale or liquidation or otherwise) and all proceeds of those assets have been fully distributed (whether in accordance with the Transaction Documents or otherwise and whether so distributed to holders of the Reference Obligations or any other person).

(D) Section 9.1(b)(ii) of the Credit Derivatives Definitions is hereby amended by adding after the last word "Transaction" and before the semi-colon the phrase ", except as provided in the Schedule to the Agreement."

(E) "Notice of Shortfall" means a written notice delivered by the Buyer to the Seller containing a statement of the Shortfall and setting forth the calculations by which Buyer determined the Shortfall.

12. Seller's Right to Purchase

If Seller has paid a Cash Settlement Amount to Buyer on a Cash Settlement Date with respect to a Credit Event, Seller shall have the option to purchase from Buyer the Reference Obligation ("Seller's Right to Purchase") on each subsequent Cash Settlement Date, for settlement as set forth below, and



Confidential Treatment Requested by Ambac AMB-V_00501184

pursuant to the terms set forth below. Seller may exercise Seller's Right to Purchase by notifying the Calculation Agent of its election to do so at least thirty (30) Business Days before a Cash Settlement Date (other than the initial Cash Settlement Date, in which case Seller shall not be entitled to exercise Seller's Right to Purchase). If Seller does not provide the Calculation Agent with written or oral notification of its election to exercise Seller's Right to Purchase by 4:00 p.m. in the Calculation Agent City at least thirty (30) Business Days before a Cash Settlement Date, then Seller will be deemed to have waived Seller's Right to Purchase with respect to that Cash Settlement Date.

If Seller exercises Seller's Right to Purchase, Buyer shall sell to Seller, and Seller shall purchase from Buyer, the Reference Obligation at a purchase amount equal to the Fixed Rate Payer Calculation Amount plus the amount comprising item (a) of the Shortfall for the Cash Settlement Date on which the purchase occurs. The settlement date for such sale and purchase will be the date customary for settlement of the purchase and sale of obligations similar to the Reference Obligation or such other date as Buyer and Seller may agree.





Confidential Treatment Requested by Ambac

**EXECUTION COPY**

Please confirm your agreement to be bound by the terms of the foregoing by executing a copy of this Confirmation and returning it to us by facsimile.

It has been a pleasure working with you on this Transaction, and we look forward to working with you again in the future.

Yours sincerely,

BNP Paribas, London Branch

By: ______________________________
Name:
Title:

Date:

By: ______________________________
Name:
Title:

Date:

Agreed and Accepted:
Ambac Credit Products, LLC

By: ______________________
Name:
Title:

NYA 830688

**EXECUTION COPY**

Schedule A

| Reference Entity | Reference Obligation | Initial Notional Amount | Maximum Notional Amount | Stated Maturity Date |
|---|---|---|---|---|
| Class V Funding III, Ltd. | Class A1 Floating Rate Notes Due 2052 | USD 0 | USD 500,000,000 | The Payment Date occurring in February 2052 |

# EXHIBIT 80

**From:** Dave Stehnacs [dave.stehnacs@zaisgroup.com]
**Sent:** Tuesday, July 17, 2007 3:19 PM
**To:** Denise Crowley; Merrill Barlow; Paul Collura; Kumar Aiyer; Anish Kumar; Michael Finnegan; Jamie Tong
**Subject:** FW: Class V Funding Portfolio
**Attachments:** Class V Funding III - FINAL PORTFOLIO.closing..xls

-----Original Message-----
From: Hollis, Howell [mailto:howell.hollis@citi.com]
Sent: Tuesday, July 17, 2007 3:16 PM
To: Dave Stehnacs
Cc: Ladden, Bradley
Subject: Class V Funding Portfolio

Attached is the Class V Funding Portfolio. I'll send you the ICE portfolio shortly.



# Class V Funding III, Ltd.

The information contained herein is privileged and confidential and intended solely for the recipient's use and may not be relied upon by any other person for any purpose. If you have received this information in error, please notify the sending party immediately by telephone and return the original to such party by mail.

The statements of fact and any models and/or modeling information contained herein, and any underlying information or assumptions related thereto (collectively, the "Information") is preliminary and may be incomplete or condensed. No representation is made as to the accuracy or reasonableness of the Information. The Information is presented as of the date(s) thereof and is subject to change without notice. The results obtained through the use of a model are highly dependent upon the value of the given inputs and, consequently, a model and any results derived therefrom may not predict actual results. This Information is provided to you for information purposes only.

The Information does not constitute an offer to enter into any transaction, or a commitment to enter into any transaction. The Information reflected herein should not be construed to be and does not constitute, an offer to sell or buy or a solicitation of an offer to sell or buy any securities, commodities or derivative instruments mentioned herein. No sale of the securities described herein may be consummated without the purchaser first having received a final offering memorandum.

Citigroup Global Markets Inc. ("CGM") is not acting as your advisor or agent. Prior to entering into any transaction, you should determine, without reliance upon CGM or its affiliates, the economic risks and merits, as well as the legal, tax and accounting characterizations and consequences of the transaction, and independently determine that you are able to assume these risks. In this regard, by acceptance of these materials, you acknowledge that you have been advised that (a) CGM is not in the business of providing legal, tax or accounting advice, (b) you understand that there may be legal, tax or accounting risks associated with the transaction, (c) you should receive legal, tax and accounting advice from advisors with appropriate expertise to assess relevant risks, and (d) you should apprise senior management in your organization as to the legal, tax and accounting advice (and, if applicable, risks) associated with this transaction and CGM's disclaimers as to these matters.

## Class V Funding III, Ltd.

### Final Portfolio as of March 15, 2007[1]

[1] Source: Bloomberg and CSAC

| | # | CUSIP | Name | Type | Face | Moody's | S&P | Manager | Synthetic |
|---|---|---|---|---|---|---|---|---|---|
| 8 | 1 | 00082WAD2 | ACABS 2006-1A A3L | ABS CDO | 9,969,804 | A2 | A | ACA | Yes |
| 9 | 2 | 00082WAD2 | ACABS 2006-1A A3L | ABS CDO | 9,969,804 | A2 | A | ACA | Yes |
| 10 | 3 | 00389PAD7 | ACABS 2006-2A A3L | ABS CDO | 10,000,000 | A2 | A | ACA | Yes |
| 11 | 4 | 00389PAD7 | ACABS 2006-2A A3L | ABS CDO | 10,000,000 | A2 | A | ACA | Yes |
| 12 | 5 | 000829AD3 | ACABS 2006-AQA A3 | ABS CDO | 10,000,000 | A2 | A | ACA | Yes |
| 13 | 6 | 000829AD3 | ACABS 2006-AQA A3 | ABS CDO | 10,000,000 | A2 | A | ACA | Yes |
| 14 | 7 | 000824AG7 | ACABS 2007-1A A3 | ABS CDO | 10,000,000 | A2 | A | ACA | No |
| 15 | 8 | 057760AD2 | BALDW 2006-4A 1 | ABS CDO | 10,000,000 | A1 | A | STATIC | Yes |
| 16 | 9 | 057760AD2 | BALDW 2006-4A 1 | ABS CDO | 10,000,000 | A1 | A | STATIC | Yes |
| 17 | 10 | 07272PAC4 | BAYF 2006-1A 4 | ABS CDO | 9,944,762 | A2 | A | RaboBank | Yes |
| 18 | 11 | 07272PAC4 | BAYF 2006-1A 4 | ABS CDO | 9,944,762 | A2 | A | RaboBank | Yes |
| 19 | 12 | 05539MAD2 | BFCGE 2006-1A A3L | ABS CDO | 9,926,160 | A2 | A | Braddock | Yes |
| 20 | 13 | 05539MAD2 | BFCGE 2006-1A A3L | ABS CDO | 9,926,160 | A2 | A | Braddock | Yes |
| 21 | 14 | 118011AD7 | BUCHN 2006-1A A4 | ABS CDO | 10,000,000 | A1 | A | STATIC | Yes |
| 22 | 15 | 118011AD7 | BUCHN 2006-1A A4 | ABS CDO | 10,000,000 | A1 | A | STATIC | Yes |
| 23 | 16 | 142146AE9 | CACDO 2006-1A C1 | ABS CDO | 10,000,000 | A2 | A | SSGA | Yes |
| 24 | 17 | 142146AE9 | CACDO 2006-1A C1 | ABS CDO | 10,000,000 | A2 | A | SSGA | Yes |
| 25 | 18 | 13189LAD1 | CAMBR 5A B | ABS CDO | 10,000,000 | A3 | A- | Cambridge Place | Yes |
| 26 | 19 | 13189LAD1 | CAMBR 5A B | ABS CDO | 10,000,000 | A3 | A- | Cambridge Place | Yes |
| 27 | 20 | 15719MAC5 | CETUS 2006-2A B | ABS CDO | 10,000,000 | A2 | A | GSC | Yes |
| 28 | 21 | 15719MAC5 | CETUS 2006-2A B | ABS CDO | 10,000,000 | A2 | A | GSC | Yes |
| 29 | 22 | 15719RAF7 | CETUS 2006-3A C1 | ABS CDO | 10,000,000 | A2 | A | GSC | Yes |
| 30 | 23 | 15719RAF7 | CETUS 2006-3A C1 | ABS CDO | 10,000,000 | A2 | A | GSC | Yes |
| 31 | 24 | 157198AC6 | CETUS 2006-4A B | ABS CDO | 12,000,000 | A2 | A | GSC | No |
| 32 | 25 | 193067AD7 | CLDW 2006-1A B | ABS CDO | 10,000,000 | A2 | A | MetWest | Yes |
| 33 | 26 | 2163P1AA2 | COOKS 2007-8A A | ABS CDO | 20,000,000 | A2 | A | STATIC | Yes |
| 34 | 27 | 12777CAE9 | CRNMZ 2006-2A C | ABS CDO | 10,000,000 | A2 | A | Cairn | Yes |
| 35 | 28 | 12777CAE9 | CRNMZ 2006-2A C | ABS CDO | 10,000,000 | A2 | A | Cairn | Yes |
| 36 | 29 | 25454XAD7 | DGCDO 2006-2A C | ABS CDO | 10,000,000 | A2 | A | SSGA | Yes |
| 37 | 30 | 25454XAD7 | DGCDO 2006-2A C | ABS CDO | 10,000,000 | A2 | A | SSGA | Yes |
| 38 | 31 | 26139UAD4 | DRACO 2007-1A A3 | ABS CDO | 10,000,000 | A2 | A | Declaration | No |
| 39 | 32 | 28248EAL8 | EIGHT 2007-1A B | CDO Squared | 20,000,000 | A2 | A | Harding | No |
| 40 | 33 | 26925WAD8 | ETRD 2006-5A A3 | ABS CDO | 20,000,000 | A2 | A | E-Trade | Yes |
| 41 | 34 | 36868FAE1 | GEMST 2006-5A C | ABS CDO | 20,000,000 | A2 | A | HBK | Yes |
| 42 | 35 | 36868QAE7 | GEMST 2006-6A C | ABS CDO | 20,000,000 | A2 | A | HBK | Yes |
| 43 | 36 | 37638NAD3 | GLCR 2006-4A C | ABS CDO | 9,936,305 | A2 | A | Terwin | Yes |
| 44 | 37 | 362479AD9 | GSCSF 2006-4A A3 | ABS CDO | 10,000,000 | A2 | A | GSC | Yes |
| 45 | 38 | 362479AD9 | GSCSF 2006-4A A3 | ABS CDO | 10,000,000 | A2 | A | GSC | Yes |
| 46 | 39 | 46426VAC4 | ICM 2006-S1 A3L | ABS CDO | 9,812,927 | A2 | A | Ischus | Yes |
| 47 | 40 | 46426YAC8 | ICM 2006-S2A A3L | ABS CDO | 10,000,000 | A2 | A | Ischus | Yes |
| 48 | 41 | 46426YAC8 | ICM 2006-S2A A3L | ABS CDO | 5,000,000 | A2 | A | Ischus | Yes |
| 49 | 42 | 46426YAC8 | ICM 2006-S2A A3L | ABS CDO | 5,000,000 | A2 | A | Ischus | Yes |
| 50 | 43 | 45072HAJ9 | IXCBO 2006-2A C | ABS CDO | 10,000,000 | A2 | A | Ixis | Yes |
| 51 | 44 | 903399AA1 | JACKS 2006-4A D | ABS CDO | 10,000,000 | A1 | A | STATIC | Yes |
| 52 | 45 | 903399AA1 | JACKS 2006-4A D | ABS CDO | 10,000,000 | A1 | A | STATIC | Yes |
| 53 | 46 | 49916RAE0 | KNOLL 2006-2A C | ABS CDO | 9,997,415 | A2 | A | Deerfield | Yes |
| 54 | 47 | 507238AJ2 | LSECA 2007-1A B | ABS CDO | 7,500,000 | A3 | A- | GSC | No |
| 55 | 48 | 53160QAC1 | LBRAC 2006-1A C | ABS CDO | 10,000,000 | A2 | A | LBAM | Yes |
| 56 | 49 | 53160QAC1 | LBRAC 2006-1A C | ABS CDO | 10,000,000 | A2 | A | LBAM | Yes |
| 57 | 50 | 530150AL6 | LBRTS 2006-1A D | ABS CDO | 10,000,000 | A2 | A | Cohen Bros. | Yes |
| 58 | 51 | 50547QAC1 | LCERT 2006-1A B | ABS CDO | 10,000,000 | A2 | A | STATIC | Yes |
| 59 | 52 | 50547QAC1 | LCERT 2006-1A B | ABS CDO | 10,000,000 | A2 | A | STATIC | Yes |
| 60 | 53 | 543175AJ2 | LSTRT 2006-1A D | ABS CDO | 10,000,000 | A2 | A | JPMIM | Yes |
| 61 | 54 | 59802RAL0 | MIDOR 2006-1A C | ABS CDO | 10,000,000 | A2 | A | LBAM | Yes |
| 62 | 55 | 59802RAL0 | MIDOR 2006-1A C | ABS CDO | 10,000,000 | A2 | A | LBAM | Yes |
| 63 | 56 | 553129AD9 | MKP 6A C | ABS CDO | 10,000,000 | A2 | A | MKP | Yes |
| 64 | 57 | 553129AD9 | MKP 6A C | ABS CDO | 10,000,000 | A2 | A | MKP | Yes |
| 65 | 58 | 612180AJ8 | MNPT 2006-1A D | ABS CDO | 9,890,091 | A2 | A | Fortis Investments | Yes |
| 66 | 59 | 612181AJ6 | MNPT 2006-2A A4 | ABS CDO | 10,000,000 | A2 | A | Fortis Investments | Yes |
| 67 | 60 | 612181AJ6 | MNPT 2006-2A A4 | ABS CDO | 10,000,000 | A2 | A | Fortis Investments | Yes |

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 68 | | 61 | 615120AE2 | MNTRS 2006-1A C | ABS CDO | 10,000,000 | A2 | A | Vanderbilt | Yes |
| 69 | | 62 | 67572GAF8 | OCTAN 2006-1A D | ABS CDO | 10,000,000 | A2 | A | Harding | Yes |
| 70 | | 63 | 67572GAF8 | OCTAN 2006-1A D | ABS CDO | 10,000,000 | A2 | A | Harding | Yes |
| 71 | | 64 | 67572JAC9 | OCTAN 2006-2A C1 | ABS CDO | 10,000,000 | A2 | A | Harding | Yes |
| 72 | | 65 | 67572JAC9 | OCTAN 2006-2A C1 | ABS CDO | 10,000,000 | A2 | A | Harding | Yes |
| 73 | | 66 | 67572JAC9 | OCTAN 2006-3A B | ABS CDO | 12,750,000 | A2 | A | Harding | No |
| 74 | | 67 | 6757M1AE2 | OCTON 2007-1A B | ABS CDO | 20,000,000 | A2 | A | Harding | No |
| 75 | | 68 | 68571WAG0 | ORCHD 2006-3A C | ABS CDO | 9,962,761 | A2 | A | STAM | Yes |
| 76 | | 69 | 68571WAG0 | ORCHD 2006-3A C | ABS CDO | 9,962,761 | A2 | A | STAM | Yes |
| 77 | | 70 | 68626VAC6 | ORIN 2006-1 C | ABS CDO | 10,000,000 | A2 | A | NIB Capital | Yes |
| 78 | | 71 | 68626VAC6 | ORIN 2006-1 C | ABS CDO | 10,000,000 | A2 | A | NIB Capital | Yes |
| 79 | | 72 | 68630QAF4 | ORIN 2006-2A C1 | ABS CDO | 10,000,000 | A2 | A | NIB Capital | Yes |
| 80 | | 73 | 68630QAF4 | ORIN 2006-2A C1 | ABS CDO | 10,000,000 | A2 | A | NIB Capital | Yes |
| 81 | | 74 | 72912SAG9 | PLETT 2007-1A B | ABS CDO | 20,000,000 | A3 | A- | Investec | No |
| 82 | | 75 | 74732AAD9 | PYXIS 2006-1A C | ABS CDO | 10,000,000 | A2 | A | Putnam | Yes |
| 83 | | 76 | 74732AAD9 | PYXIS 2006-1A C | ABS CDO | 10,000,000 | A2 | A | Putnam | Yes |
| 84 | | 77 | 74732XAE7 | PYXIS 2007-1A C | ABS CDO | 20,000,000 | A2 | A | Putnam | No |
| 85 | | 78 | 80918HAG0 | SCORP 2006-1A D | ABS CDO | 10,000,000 | A2 | A | Cohen Bros | Yes |
| 86 | | 79 | 80918HAG0 | SCORP 2006-1A D | ABS CDO | 10,000,000 | A2 | A | Cohen Bros | Yes |
| 87 | | 80 | 87337UAD8 | TABS 2005-4A D | ABS CDO | 10,000,000 | A2 | A | Tricadia | Yes |
| 88 | | 81 | 87337WAD2 | TABS 2006-5A A3 | ABS CDO | 10,000,000 | A2 | A | Tricadia | Yes |
| 89 | | 82 | 87337WAD2 | TABS 2006-5A A3 | ABS CDO | 10,000,000 | A2 | A | Tricadia | Yes |
| 90 | | 83 | 87337YAD8 | TABS 2006-6A A3 | ABS CDO | 10,000,000 | A2 | A | Tricadia | Yes |
| 91 | | 84 | 87337YAD8 | TABS 2006-6A A3 | ABS CDO | 10,000,000 | A2 | A | Tricadia | Yes |
| 92 | | 85 | 89054BAE3 | TOPG 2006-2A B | ABS CDO | 20,000,000 | A2 | A | MetWest | Yes |
| 93 | | 86 | 89155WAE5 | TOURM 2006-2A D | ABS CDO | 10,000,000 | A2 | A | BlackRock | Yes |
| 94 | | 87 | 55313HAC2 | VELA 2006-1A C | ABS CDO | 10,000,000 | A2 | A | MKP | Yes |
| 95 | | 88 | 55313HAC2 | VELA 2006-1A C | ABS CDO | 10,000,000 | A2 | A | MKP | Yes |
| 96 | | 89 | 925345AE0 | VERT 2006-1A A3 | ABS CDO | 10,000,000 | A2 | A | Vertical Capital | Yes |
| 97 | | 90 | 925345AE0 | VERT 2006-1A A3 | ABS CDO | 10,000,000 | A2 | A | Vertical Capital | Yes |
| 98 | | 91 | 92534FAD0 | VRGO 2006-1A A3 | ABS CDO | 10,000,000 | A2 | A | Vertical Capital | Yes |
| 99 | | 92 | 92534FAD0 | VRGO 2006-1A A3 | ABS CDO | 10,000,000 | A2 | A | Vertical Capital | Yes |
| 100 | | | | | Total | 1,001,493,711 | | | | |

# EXHIBIT 81

MEMORANDUM TO

Robert Genader
William McKinnon
Robert Bose
Rick Persaud
David Wallis
John Bryan
Diane Dickensheid
John Uhlein
Robert Selvaggio
Susan Lobel
Brian Feit

CC: A. Knott
T. Gandolfo
S. Gordon

RE: Securitization Senior Credit Committee Meeting

Please note that on **Friday March 16, 2007 @ 4:00 pm** at the Securitization Senior Credit Committee Meeting we will be discussing the following deal in the Underwriting Conference Room on the 17th Floor.

| Credit Presentation | Amount | Underwriter |
|---|---|---|
| Class V Funding III, Ltd. | $500,000,000 | D. Salz, C. Lachnicht, P. Van Riper |

| Credit Risk Analyst |
|---|
| E. He |

If you have any questions, please do not hesitate to call.

**Ambac Assurance may be subject to an obligation of confidentiality in relation to the information contained within this underwriting report which could expose us to liability if the obligation is breached. This report and its contents should be kept confidential by you and should not be discussed with, or distributed to, any person (whether within Ambac or not) who is not an addressee of this underwriting report unless you have first confirmed with the relevant underwriter or a member of the legal department that no such obligation exists. Thank you for your co-operation.**

Thank you.