**David Mechlin**
*Analyst*

Mr. Mechlin joined LIG as a credit analyst in 2006.  Mr. Mechlin recently earned his Bachelors of Science in Finance from NYU.

**Berchmans Rivera**
*Analyst*

Mr. Rivera joined LIG as a credit analyst in 2006.  Mr. Rivera recently earned his Bachelors of Arts in Economics from Harvard University.

See "Risk Factors—CDO of CDO Securities Experience; Dependence on Manager and Key Personnel Thereof; Relationship to Prior Investment Results".

Confidential Treatment Requested by Ambac

AMB-V_00045267

## THE MANAGEMENT AGREEMENT

**General**

Certain advisory and administrative functions with respect to the Collateral will be performed by the Manager under the Management Agreement. In accordance with the Portfolio Quality Tests and the Coverage Tests and other requirements set forth in the Indenture, and in accordance with the provisions of the Management Agreement, the Manager will select the portfolio of Eligible Collateral Debt Securities to be acquired by the Issuer. Pursuant to the terms of the Management Agreement and the Indenture, the Manager will monitor the Eligible Collateral Debt Securities and provide the Issuer with advice with respect to the composition and characteristics of the Eligible Collateral Debt Securities, and with respect to any disposition or tender of Eligible Collateral Debt Securities and the application of the proceeds thereof. The Manager will also direct the exercise of any rights and remedies of the Issuer in connection with the Eligible Collateral Debt Securities. In addition, the Manager will advise the Issuer with respect to CDS Assets and Covered Short CDS Assets and entering into Hedge Agreements and the Cashflow Swap Agreement and instruct the Trustee from time to time with respect to the investment of retained funds in Eligible Investments.

The Indenture will place significant restrictions on the Manager's ability to advise the Issuer to buy and sell Collateral, and the Manager will be subject to compliance with such restrictions. Accordingly, during certain periods or in certain specified circumstances, the Issuer may be unable to buy or sell Eligible Collateral Debt Securities or to take other actions which the Manager might consider in the best interests of the Issuer and the Noteholders as a result of the restrictions contained in the Indenture. See "Risk Factors—Potential Conflicts of Interest Involving the Manager".

The Manager and its Affiliates may engage in other business and furnishing investment management, advisory and other types of services to other clients whose investment policies differ from those followed by the Manager on behalf of the Issuer, as required by the Indenture. The Manager may therefore make recommendations to or effect transactions for such other clients that may differ from those effected with respect to the securities in the Collateral. In addition, the Manager may, from time to time, cause or direct another account managed by the Manager to buy or sell, or recommend to the account the buying or selling of, securities of the same or a different kind or class of the same issuer, as the Manager directs to be purchased or sold on behalf of the Issuer. See "Risk Factors—Potential Conflicts of Interest Involving the Manager".

The Manager will be required to perform its obligations under the Management Agreement and the Indenture in a prudent manner with reasonable care and in good faith using a degree of skill and attention no less than that which the Manager (i) exercises with respect to comparable assets that it manages for itself and its Affiliates and (ii) exercises with respect to comparable assets that it manages for others, and in carrying out its obligations under the Management Agreement and the Indenture, to act in a manner consistent with practices and procedures followed by institutional managers of national standing relating to assets of the nature and character of the Collateral, except as expressly provided otherwise in the Management Agreement and/or the Indenture.

**Termination and Assignment of the Management Agreement; Appointment of Successor**

*Automatic Termination*

The Management Agreement will automatically terminate upon the earlier to occur of (i) the payment in full of the Notes and the termination of the Indenture in accordance with its terms or (ii) the liquidation of the Collateral and the final distribution of the proceeds of such liquidation as provided in the Indenture.

*Removal Upon Manager Default*

The Manager may be removed upon the occurrence of a Manager Default by the Issuer at the direction of (i) the Holders of a Majority of the most Senior Class of Secured Notes Outstanding (excluding any Secured Notes held by the Manager, its Affiliates and/or their respective employees) or (ii) the Holders of a Majority of the Income Notes (excluding any Income Notes held by the Manager, its Affiliates and/or their respective employees).

Confidential Treatment Requested by Ambac

AMB-V_00045268

For purposes of the Management Agreement, "Manager Default" will mean:

    (i)    the failure of the Manager to observe or perform in any respect any covenant or agreement set forth in the Management Agreement or any terms of the Indenture applicable to it, which failure in each case materially and adversely affects the Issuer or the Holders of any Class of the Notes or any of their respective rights under the Indenture or the Management Agreement, and the Manager fails to cure such breach within 30 days of the Manager's receipt of written notice of such breach from the Trustee (*provided* that upon becoming aware of any such breach, the Manager will be required to give written notice thereof to the Issuer and the Trustee);

    (ii)    the purchase by the Manager of an obligation which did not qualify as an Eligible Collateral Debt Security or did not comply with the Investment Criteria applicable to such purchase, in either case, at the time of purchase, and the Manager fails to cure such breach through a sale of such Eligible Collateral Debt Security or otherwise within 30 days of the Manager's receipt of written notice of such breach from the Trustee (*provided* that upon becoming aware of any such breach, the Manager will be required to give written notice thereof to the Issuer and the Trustee), unless such event has been waived in writing by a Majority of the most Senior Class of Notes Outstanding;

    (iii)    the occurrence of certain insolvency events with respect to the Manager as set forth in the Management Agreement;

    (iv)    the occurrence of an act by the Manager that constitutes fraud or criminal activity in the performance of its obligations under the Management Agreement, the Collateral Administration Agreement or the Indenture, or any officers or directors of the Manager primarily responsible for administration of the Collateral are indicted for a criminal offense materially related to the Manager's primary business;

    (v)    the occurrence of an Event of Default described in clause (i), (ii) or (iv) under "The Indenture and the Income Note Paying Agency Agreement—Events of Default";

    (vi)    the Principal Coverage Ratio for the Class A Notes is equal to or less than 99%; or

    (vii)    the occurrence of any of the following: (1) a merger of the Manager into another Person, (2) a merger of the Manager with another Person resulting in a new Person, (3) the succession by another Person to substantially all of the business of the Manager or (4) any other corporate action with substantially similar effect to that described in clause (1), (2) or (3) above; *provided* that, in the case of each of the foregoing clauses (1), (2), (3) and (4), such event shall not constitute a Manager Default if (x) after giving effect to such event, the Manager is an Affiliate of Credit Suisse Group or (y) a Majority of the most Senior Class of Notes Outstanding consents thereto.

*Removal Without Cause*

    At any time, the Manager may be removed without cause upon 90 days' prior notice by the Issuer at the direction of (i) Holders of at least 66⅔% of the Principal Balance—Aggregate of each Class of Secured Notes (each voting as a single class) and (ii) a Majority of the Income Notes, so long as no Event of Default shall have occurred and be continuing. Notwithstanding the foregoing, no such removal shall be effective unless the terms described under "—Eligible Successor" below have been met.

*Resignation*

    At any time following the Ramp-Up End Date, the Manager may resign without penalty on 90 days' notice to the Issuer (or such shorter notice as is acceptable to the Issuer). Notwithstanding the foregoing, no such resignation shall be effective unless the terms described under "—Eligible Successor" below have been met.

*Eligible Successor*

    Upon any removal or resignation of the Manager, a Majority of any Class of Notes may propose the appointment of an Eligible Successor. No such removal or resignation of the Manager is effective unless: (i) an

Confidential Treatment Requested by Ambac

AMB-V_00045269

Eligible Successor has agreed in writing to assume all of the Manager's duties and obligations under the Management Agreement, (ii) such Eligible Successor has been consented to by the Requisite Noteholders, (iii) 10 days' prior notice has been given to the Rating Agencies. each Hedge Counterparty, the Cashflow Swap Counterparty and the Trustee and (iv) such assumption by an Eligible Successor has received Rating Agency Confirmation.

    For the purposes of the Management Agreement, an "Eligible Successor" shall mean an established institution that (i) has demonstrated an ability to professionally and competently perform duties similar to those imposed upon the Manager thereunder and with a substantially similar (or better) level of expertise and (ii) is legally qualified and has the capacity to act as Manager thereunder, as successor to the Manager, and agrees in writing to assume all of the responsibilities, duties and obligations of the Manager thereunder and under the applicable terms of the Indenture. If the Manager shall resign or be removed but an Eligible Successor shall not have assumed all of the Manager's duties and obligations within 90 days after such resignation, then the resigning Manager may petition any court of competent jurisdiction for the appointment of an Eligible Successor.

    _Assignment_

    Any assignment of material rights and delegation of material duties under the Management Agreement to any Person, in whole or in part, by the Manager will be deemed null and void unless such assignment is consented to in writing by the Issuer, and (i) a Majority of the most Senior Class of Notes Outstanding and (ii) a Majority of the Income Notes, in each case excluding the Notes held by the Manager, its Affiliates and/or their respective employees. and Rating Agency Confirmation from S&P is received with respect to such assignment; _provided, however,_ that the Manager will be permitted to assign its rights and delegate its duties and obligations under the Management Agreement, the Indenture and the Collateral Administration Agreement without Noteholder consent and without receiving Rating Agency Confirmation from S&P in accordance with applicable law to an existing or future Affiliate that (i) has demonstrated (or has officers and employees who have demonstrated) an ability to professionally and competently perform duties similar to those imposed upon the Manager under the Management Agreement, (ii) is legally qualified and has the capacity to act as Manager under the Management Agreement and (iii) employs the principal personnel performing the duties required under the Management Agreement prior to such assignment.

**Limitation of Liability; Indemnity**

    Neither the Manager, any Affiliates of the Manager, nor any of their directors, officers, members, equity holders, advisors, agents, attorneys or employees will be liable to the Issuer, the Trustee, the Holders of Notes or any other person for any acts or omissions (i) by the Manager or any Affiliate of the Manager, or any of their directors, officers, members, agents, equity holders, advisors, attorneys or employees under or in connection with the Management Agreement or the provisions of the Indenture applicable to it, or for any decrease in the value of the Collateral, except by reason of acts or omissions constituting bad faith, willful misconduct or gross negligence in the performance of, or reckless disregard with respect to, the duties of the Manager under the Management Agreement and under the express terms of the Indenture applicable to the Manager or (ii) not involving the exercise of discretion by the Manager or any Affiliate of the Manager, or any of their directors, officers, members, agents, equity holders or employees under or in connection with the Management Agreement or the express terms of the Indenture applicable to the Manager, taken or omitted to be taken by any of them at the express direction of the Board of Directors or the Trustee or any authorized representative of the foregoing. The Manager may, with respect to the affairs of the Issuer or the Manager's obligations or rights under the Management Agreement or the terms of the Indenture applicable to it, consult with counsel, accountants and other advisors as deemed necessary or appropriate, in their capacity as such, selected by the Manager, and the Manager will be fully protected, to the extent permitted by applicable law, in acting or failing to act under the Management Agreement if such action or inaction is taken or not taken by the Manager in accordance with the advice or opinion of such counsel, accountants or advisors.

    The Manager and each of its Affiliates will be entitled to indemnification by the Issuer under certain circumstances, in accordance with the Priority of Payments.

110

                                    AMB-V_00045270

**Compensation of the Manager**

As compensation for the performance of its obligations under the Management Agreement, the Manager will be entitled to receive a Management Fee.

"Management Fee" means, for any Payment Date, an amount equal to the product of (a) the Management Fee Basis Amount for such Payment Date, (b) 0.10% per annum and (c) the actual number of days in such Period, *divided by* 360.

"Management Fee Basis Amount" means an amount equal, for any Payment Date, to the average of the Principal Balance—Portfolio (excluding the Principal Balance—Aggregate of Defaulted Securities) on the first day of the related Period and the Principal Balance—Portfolio (excluding the Principal Balance—Aggregate of Defaulted Securities) on the last day of such Period.

The Management Fee will be payable on each Payment Date to the extent of the funds available for such purpose in accordance with the Priority of Payments. The Management Fee payable on any Payment Date will be payable prior to payments of interest or principal on the Secured Notes, and will be payable prior to payments of distributions on the Income Notes and will accrue from the Closing Date; *provided* that in the event that the Manager is removed or resigns, the amount of such fee accrued to the effective date of such removal or resignation will be payable to the Manager on the next succeeding Payment Date or Payment Dates on which such amount may be paid, in accordance with the Priority of Payments (*provided* that the payment of any such fee will be *pari passu* with the payment of any Management Fee to the then-current collateral manager).

The costs and expenses (including the fees and disbursements of counsel) of the Manager incurred in connection with the negotiation and preparation of and the execution of the Management Agreement, and all matters incident thereto, will be borne by the Issuer. Except as set forth in the preceding sentence, the Manager will be responsible for all expenses incurred in the performance of its obligations under the Management Agreement.

**Disclosure and Consent Provisions Relating to "Principal Trades" and Cross-Transactions**

Section 206(3) of the Advisers Act provides that it is unlawful for any investment adviser, directly or indirectly "acting as principal for his own account, knowingly to sell any security to or purchase any security from a client, or acting as broker for a person other than such client, knowingly to effect any sale or purchase of any security for the account of such client, without disclosing to such client in writing before the completion of such transaction the capacity in which he is acting and obtaining the consent of the client to such transaction." Transactions subject to the foregoing requirements are sometimes referred to as "principal trades".

In that connection, the Management Agreement will provide that at any time on and after the Closing Date, the Manager will not direct the Trustee or the Issuer to engage in any transaction (other than an agency cross transaction permitted as described in the next succeeding paragraph) in which the Manager determines, in its sole reasonable discretion, that the Issuer's consent to an actual or potential conflict of interests is necessary or advisable under applicable law (including, without limitation, Section 206(3) of the Advisers Act and the rules and regulations promulgated thereunder), by reason of the involvement of the Manager or an Affiliate of the Manager or otherwise, unless (i) the Conflicts Review Board as the Issuer's agent shall have received from the Manager all necessary or appropriate information relating to such transaction and (ii) the Conflicts Review Board shall have approved such transaction.

The Issuer in its sole discretion may (and, after the occurrence of an "Event of Default" under the Indenture, at the direction of the Requisite Noteholders, will) at any time and from time to time, review the appointment of Wilmington Trust Company as the "Conflicts Review Board", may revoke such appointment, may appoint a successor Conflicts Review Board for the purposes set forth in the Management Agreement and may establish new or different procedures to comply with the requirements of the Advisers Act.

The Management Agreement will also provide that the Manager will not direct the Trustee to purchase any Eligible Collateral Debt Security not identified in the Indenture for inclusion in the Collateral from any account or portfolio for which the Manager or an Affiliate thereof serves as investment adviser, or direct the Trustee to sell any Collateral to any account or portfolio for which the Manager or an Affiliate thereof serves as investment adviser,

111

unless the Manager obtains the consent of the Issuer or the Conflicts Review Board to the extent required under the provisions set forth below in this paragraph. The Manager will not direct the Trustee to engage in any agency cross transaction for the Issuer that requires the Issuer's consent pursuant to Section 206(3) of the Advisers Act and the rules and regulations promulgated thereunder unless such transaction is effected in compliance with Rule 206(3)-2 under the Advisers Act. For purposes of this paragraph, an "agency cross transaction for the Issuer" has the meaning assigned in Rule 206(3)-2(b) under the Advisers Act to the term "agency cross transaction for an advisory client." The Manager will in the Management Agreement advise the Issuer that with respect to agency cross transactions, the Manager or any other person relying on Rule 206(3)-2 may act as broker for, receive commissions from, and have a potentially conflicting division of loyalties and responsibilities regarding both parties to such transactions. The Issuer will in the Management Agreement give its written consent prospectively authorizing the Manager or any person relying on Rule 206(3)-2 to effect cross transactions (including, without limitation, agency cross transactions) for the Issuer. Such consent may be revoked at any time by written notice from the Issuer or the Conflicts Review Board to the Manager or such person relying on Rule 206(3)-2, as applicable. To the extent that the Issuer's consent with respect to any particular transaction is required by law (including Section 206(3) of the Advisers Act and the rules and regulations promulgated thereunder), no such transaction (other than a cross transaction effected as described in this paragraph and the Advisers Act) may be effected except in compliance with the provisions described in the immediately preceding paragraph.

Confidential Treatment Requested by Ambac

AMB-V_00045272

## CERTAIN MATURITY AND PREPAYMENT CONSIDERATIONS

**General**

　　The actual maturities of the Secured Notes and the actual redemption of the Income Notes are generally expected to occur prior to the Maturity Date—Stated, although there can be no assurance as to such matters.

**Prepayment**

　　The financial assets underlying the Eligible Collateral Debt Securities may be subject to prepayment. Such prepayments are affected by a number of factors. If prevailing interest rates fall below the interest rates on such financial assets, prepayment rates would generally be expected to increase. Conversely, if prevailing interest rates rise above the interest rates on such financial assets, prepayment rates would generally be expected to decrease. There can be no assurance that the Eligible Collateral Debt Securities will prepay at any particular rate.

　　Some or all of the loans, bonds or financial assets underlying the Eligible Collateral Debt Securities may be prepaid at any time. Prepayments on loans, bonds or financial assets are affected by a number of factors, including interest rate movements, general economic conditions and other factors. Defaults on and liquidations of the loans, bonds or financial assets underlying certain of the Eligible Collateral Debt Securities may also lead to early repayment thereof. The Manager will have the right to direct the sale of Eligible Collateral Debt Securities that become Defaulted Securities or Credit Risk Securities. The existence and frequency of such prepayments, optional redemptions, defaults and liquidations will affect the average lives of, and credit support for, the Secured Notes and the date of redemption of the Income Notes.

**Weighted Average Life and Redemption**

　　Weighted average life refers to the average amount of time that will elapse from the date of delivery of a security until each dollar of the principal of such security will be paid to the investor. The weighted average lives of the Secured Notes of each Class and the date of redemption of the Income Notes will be affected by the sale of Eligible Collateral Debt Securities and the amount and frequency of principal payments, which are dependent upon, among other things, the amount of payments received at or in advance of the scheduled maturity of the Eligible Collateral Debt Securities and their underlying mortgage loans, loans, bonds or other financial assets. The actual weighted average lives and actual maturities of the Secured Notes and the date of redemption of the Income Notes will be affected by the financial conditions of the issuers of the Eligible Collateral Debt Securities and the existence and frequency of prepayment, optional redemption, auction call or sinking fund features, the prevailing level of interest rates, the redemption prices, the default rates and level of recoveries on any defaulted securities and the frequency of tender or exchange offers for such Eligible Collateral Debt Securities. Any disposition of an Eligible Collateral Debt Security may change the composition and characteristics of the Collateral and the rates of payment thereon, and, accordingly, may affect the actual weighted average lives of the Secured Notes and the date of redemption of the Income Notes. The rate of future defaults and the amount and timing of any cash realization from Defaulted Securities and Credit Risk Securities also will affect the maturity and weighted average lives of the Secured Notes and the date of redemption of the Income Notes. The weighted average life of the Secured Notes of each Class and the date of redemption of the Income Notes may also vary depending on whether or not the Notes are redeemed in a Redemption. The weighted average lives of the Secured Notes are expected to be shorter, and may be substantially shorter, than the Maturity Date—Stated and the date of redemption of the Income Notes is expected to be sooner, and may be substantially sooner, than the Maturity Date—Stated. The amount of Eligible Collateral Debt Securities purchased at the Closing Date will also affect the weighted average lives of the Secured Notes and the date of redemption of the Income Notes. The portfolio of Eligible Collateral Debt Securities will change from time to time as a result of sales of Eligible Collateral Debt Securities.

**Yield**

　　The yield to maturity of the Secured Notes of each Class and the amount of distributions on the Income Notes will be affected by the rates of repayment of the Eligible Collateral Debt Securities as well as by the timing of any redemption of the Notes in a Redemption (and by the related Redemption Prices). The yield to maturity of the Secured Notes of each Class and the amount of distributions on the Income Notes may also be affected by rates of delinquencies and defaults on and liquidations of the Eligible Collateral Debt Securities, sales of Eligible Collateral

Confidential Treatment Requested by Ambac

AMB-V_00045273

Debt Securities, the effects of the Coverage Tests on payments of principal of the Notes pursuant to the Priority of Payments, available funds caps or other caps on the interest rate payable on the Eligible Collateral Debt Securities and by timing mismatches on the reset of the interest rates between the Eligible Collateral Debt Securities and the Secured Notes.  The yield to investors in the Secured Notes of any Class and the amount of any distribution payable to any Holder of Income Notes may be adversely affected to the extent that the Co-Issuers incur any significant unexpected expenses not absorbed by Notes of another, more subordinated Class.

Although a variety of factors may be expected to cause an early repayment of the Notes in whole or in part, in the absence of such factors the Issuer is not contractually obligated to repay the Secured Notes or to redeem the Income Notes on any date prior to the Maturity Date—Stated.  The receipt of principal payments on the Secured Notes or distributions on the Income Notes at rates slower than the rates that were anticipated by investors purchasing Notes at a discount will result in an actual yield on such Notes that is lower than anticipated by such investors.

Confidential Treatment Requested by Ambac

AMB-V_00045274

## PURCHASE AND TRANSFER RESTRICTIONS

Because of the following restrictions, purchasers are advised to consult legal counsel prior to making any offer, resale, pledge or other transfer of the Notes. Purchasers of Notes represented by an interest in a Temporary Regulation S Global Note or Regulation S Global Note are advised that such interests will not be transferable to U.S. Persons at any time.

The Notes have not been and will not be registered under the Securities Act or any state securities or "Blue Sky" laws or the securities laws of any other jurisdiction and, accordingly, may not be reoffered, resold, pledged or otherwise transferred except in accordance with the restrictions set forth below.

Without limiting the foregoing, by holding a Note, each Holder of Notes will acknowledge and agree, among other things, that such Holder understands that neither of the Co-Issuers is registered as an investment company under the Investment Company Act, but that the Co-Issuers claim exemption from registration in reliance on an exemption from registration as an investment company under the Investment Company Act for investment companies organized under the laws of a jurisdiction other than the United States or any state thereof (a) whose investors resident in the United States are solely QPs and (b) which do not make a public offering of their securities in the United States. Each Holder of Notes will further acknowledge and agree that it is aware that the Management Agreement and the Indenture authorize the Manager to cause the Issuer to purchase Eligible Collateral Debt Securities from, and sell Eligible Collateral Debt Securities to, the Manager, its Affiliates and funds managed by the Manager or its Affiliates and each such Holder consents to such purchases and sales, *provided* that they are carried out in compliance with the provisions of the Management Agreement and the Indenture.

*Prospective Initial Investors of the Notes*

Each prospective initial investor in the Notes offered in reliance on Rule 144A or another applicable exemption from registration under the Securities Act (a "Rule 144A Offeree") and each prospective initial investor in the Notes offered in reliance on Regulation S (a "Regulation S Offeree" and, together with Rule 144A Offerees, the "Initial Offerees"), by accepting delivery of this Offering Circular, will be deemed to have represented, acknowledged and agreed as follows:

(i)     The Initial Offeree acknowledges that this Offering Circular is personal to the Initial Offeree and does not constitute an offer to any other Person or to the public generally to subscribe for or otherwise acquire the Notes other than pursuant to Rule 144A, or another exemption from registration under the Securities Act, or in Offshore Transactions in accordance with Regulation S. Distribution of this Offering Circular or disclosure of any of its contents to any Person other than the Initial Offeree and those Persons, if any, retained to advise the Initial Offeree with respect thereto and other Persons meeting the requirements of Rule 144A or Regulation S is unauthorized and any disclosure of any of its contents, without the prior written consent of the Co-Issuers, is prohibited.

(ii)    The Initial Offeree agrees to make no photocopies of this Offering Circular or any documents referred to herein and, if the Initial Offeree does not purchase the Notes or the offering is terminated, to return this Offering Circular and all documents referred to herein to Citigroup Global Markets Inc., 390 Greenwich Street, New York, New York 10013, Attention: Fixed Income Global Structured Credit Products Group.

(iii)   The Initial Offeree has carefully read and understands this Offering Circular, including, without limitation, the "Risk Factors" section herein, and has based its decision to purchase the Notes upon the information contained herein and not on any other information. Additionally, the Initial Offeree has had access to the list of the portfolio of Eligible Collateral Debt Securities expected to be acquired by the Issuer on the Closing Date. The Initial Offeree is not purchasing the Notes with a view to the resale, distribution or other disposition thereof in violation of the Securities Act.

Confidential Treatment Requested by Ambac

AMB-V_00045275

**Secured Notes and Class Q Combination Notes**

*Legend*

Unless determined otherwise by the Applicable Issuers in accordance with applicable law and so long as any Class of Secured Notes or Class Q Combination Notes is Outstanding, the Secured Notes and the Class Q Combination Notes will bear a legend substantially set forth below:

THIS NOTE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), ANY STATE SECURITIES LAWS IN THE UNITED STATES OR THE SECURITIES LAWS OF ANY OTHER JURISDICTION AND NEITHER THE ISSUER NOR THE CO-ISSUER, AS APPLICABLE, HAS BEEN REGISTERED UNDER THE UNITED STATES INVESTMENT COMPANY ACT OF 1940, AS AMENDED (THE "INVESTMENT COMPANY ACT"). THE HOLDER HEREOF, BY ITS ACCEPTANCE OF THIS NOTE, REPRESENTS THAT IT HAS OBTAINED THIS NOTE IN A TRANSACTION IN COMPLIANCE WITH THE SECURITIES ACT, THE INVESTMENT COMPANY ACT AND ALL OTHER APPLICABLE LAWS OF THE UNITED STATES OR ANY OTHER JURISDICTION, AND THE RESTRICTIONS ON SALE AND TRANSFER SET FORTH IN THE INDENTURE. THE HOLDER HEREOF, BY ITS ACCEPTANCE OF THIS NOTE, FURTHER REPRESENTS, ACKNOWLEDGES AND AGREES THAT IT WILL NOT REOFFER, RESELL, PLEDGE OR OTHERWISE TRANSFER THIS NOTE (OR ANY INTEREST HEREIN) EXCEPT IN COMPLIANCE WITH THE SECURITIES ACT, THE INVESTMENT COMPANY ACT AND ALL OTHER APPLICABLE LAWS OF ANY JURISDICTION AND IN ACCORDANCE WITH THE CERTIFICATIONS AND OTHER REQUIREMENTS SPECIFIED IN THE INDENTURE REFERRED TO HEREIN (A) TO A TRANSFEREE (1) THAT IS A "QUALIFIED PURCHASER" FOR PURPOSES OF SECTION 3(c)(7) OF THE INVESTMENT COMPANY ACT PURCHASING FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QUALIFIED PURCHASER, (2) THAT (i) WAS NOT FORMED FOR THE PURPOSE OF INVESTING IN EITHER OF THE CO-ISSUERS (EXCEPT WHEN EACH BENEFICIAL OWNER OF THE PURCHASER IS A QUALIFIED PURCHASER), (ii) HAS RECEIVED THE NECESSARY CONSENT FROM ITS BENEFICIAL OWNERS IF THE PURCHASER IS A PRIVATE INVESTMENT COMPANY FORMED BEFORE APRIL 30, 1996, (iii) IS NOT A BROKER-DEALER THAT OWNS AND INVESTS ON A DISCRETIONARY BASIS LESS THAN U.S.$25,000,000 IN SECURITIES OF UNAFFILIATED ISSUERS, (iv) IS NOT A PENSION, PROFIT SHARING OR OTHER RETIREMENT TRUST FUND OR PLAN IN WHICH THE PARTNERS, BENEFICIARIES OR PARTICIPANTS, AS APPLICABLE, MAY DESIGNATE THE PARTICULAR INVESTMENTS TO BE MADE, AND IN A TRANSACTION THAT MAY BE EFFECTED WITHOUT LOSS OF ANY APPLICABLE INVESTMENT COMPANY ACT EXEMPTION AND (v) AGREES TO PROVIDE NOTICE TO ANY SUBSEQUENT TRANSFEREE OF THE TRANSFER RESTRICTIONS PROVIDED IN THIS LEGEND AND (3) THAT (i) IS A PERSON WHOM THE SELLER REASONABLY BELIEVES IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE SECURITIES ACT PURCHASING FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A "QUALIFIED INSTITUTIONAL BUYER" IN COMPLIANCE WITH RULE 144A UNDER THE SECURITIES ACT OR (ii) IS AN "ACCREDITED INVESTOR" AS DEFINED IN RULE 501(a) OF REGULATION D UNDER THE SECURITIES ACT (PROVIDED THAT IN THE CASE OF ANY TRANSFER PURSUANT TO THIS SUBCLAUSE (ii), THE TRANSFEROR OR THE TRANSFEREE HAS PROVIDED SUCH CERTIFICATIONS, LEGAL OPINIONS OR OTHER INFORMATION AS THE ISSUER, THE INDENTURE REGISTRAR AND SECURED NOTE PAYING AGENT MAY REASONABLY REQUIRE TO CONFIRM THAT SUCH TRANSFER IS BEING MADE PURSUANT TO AN EXEMPTION FROM, OR IN A TRANSACTION NOT SUBJECT TO, THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT) OR (B) TO A TRANSFEREE (1) THAT IS NOT A U.S. PERSON (AS DEFINED IN REGULATION S OF THE SECURITIES ACT) AND IS ACQUIRING THIS NOTE IN AN OFFSHORE TRANSACTION IN COMPLIANCE WITH RULE 903 OR RULE 904 OF REGULATION S UNDER THE SECURITIES ACT AND (2) THAT IS NOT A "U.S. RESIDENT" WITHIN THE MEANING OF THE INVESTMENT COMPANY ACT AND, IN THE CASE OF BOTH CLAUSES (A) AND (B), IN A PRINCIPAL AMOUNT OF NOT LESS THAN THE APPLICABLE MINIMUM DENOMINATIONS SPECIFIED IN THE INDENTURE FOR THE PURCHASER AND FOR EACH ACCOUNT FOR WHICH IT IS ACTING. EACH PURCHASER OR TRANSFEREE OF THIS NOTE WILL MAKE IN WRITING OR WILL BE DEEMED TO HAVE MADE THE REPRESENTATIONS AND AGREEMENTS SET FORTH IN THE INDENTURE.

116

THIS NOTE IS NOT TRANSFERABLE EXCEPT IN ACCORDANCE WITH THE RESTRICTIONS DESCRIBED HEREIN. ANY SALE OR TRANSFER IN VIOLATION OF THE FOREGOING WILL BE OF NO FORCE AND EFFECT, WILL BE VOID *AB INITIO*, AND WILL NOT OPERATE TO TRANSFER ANY RIGHTS TO THE TRANSFEREE, NOTWITHSTANDING ANY INSTRUCTIONS TO THE CONTRARY TO THE CO-ISSUERS, THE TRUSTEE OR ANY INTERMEDIARY. EACH TRANSFEROR OF THIS NOTE AGREES TO PROVIDE NOTICE OF THE TRANSFER RESTRICTIONS SET FORTH HEREIN AND IN THE INDENTURE TO THE TRANSFEREE. IN ADDITION TO THE FOREGOING, THE ISSUER MAINTAINS THE RIGHT TO RESELL ANY INTEREST IN THIS NOTE PREVIOUSLY TRANSFERRED TO NON-PERMITTED HOLDERS (AS DEFINED IN THE INDENTURE) IN ACCORDANCE WITH AND SUBJECT TO THE TERMS OF THE INDENTURE.

PRINCIPAL OF THIS NOTE IS PAYABLE AS SET FORTH HEREIN. ACCORDINGLY, THE OUTSTANDING PRINCIPAL OF THIS NOTE AT ANY TIME MAY BE LESS THAN THE AMOUNT SHOWN ON THE FACE HEREOF. ANY PERSON ACQUIRING THIS NOTE MAY ASCERTAIN ITS CURRENT PRINCIPAL AMOUNT BY INQUIRY OF THE TRUSTEE.

The following additional legend will appear on Secured Notes and Class Q Combination Notes and represented by a Global Note:

ANY TRANSFER, PLEDGE OR OTHER USE OF THIS NOTE FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL SINCE THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN. UNLESS THIS NOTE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY ("DTC"), NEW YORK, NEW YORK, TO THE INDENTURE REGISTRAR, THE CO-ISSUERS OR THEIR AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE OR PAYMENT AND ANY NOTE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR OF SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT HEREON IS MADE TO CEDE & CO.).

TRANSFER OF THIS NOTE SHALL BE LIMITED TO TRANSFERS IN WHOLE, AND NOT IN PART, TO NOMINEES OF DTC OR TO A SUCCESSOR THEREOF OR SUCH SUCCESSOR'S NOMINEE AND TRANSFERS OF INTERESTS IN THIS NOTE SHALL BE LIMITED TO TRANSFERS MADE IN ACCORDANCE WITH THE RESTRICTIONS SET FORTH IN THE INDENTURE.

THE APPLICABLE ISSUERS HAVE THE RIGHT, UNDER THE INDENTURE, TO COMPEL ANY OWNER OF A BENEFICIAL INTEREST IN THIS NOTE THAT IS A U.S. PERSON AND IS NOT A QUALIFIED PURCHASER AND A QUALIFIED INSTITUTIONAL BUYER TO SELL ITS INTEREST IN THE NOTES, OR MAY SELL SUCH INTEREST ON BEHALF OF SUCH OWNER.

INTERESTS IN THIS GLOBAL NOTE MUST BE HELD IN THE APPLICABLE MINIMUM DENOMINATIONS SPECIFIED IN THE INDENTURE.

The following additional legend will appear on Secured Notes represented by a Global Note:

EACH PURCHASER OR TRANSFEREE OF THIS NOTE (OR ANY INTEREST HEREIN) WILL BE DEEMED TO HAVE REPRESENTED AND AGREED, ON EACH DAY FROM THE DATE ON WHICH SUCH PURCHASER OR TRANSFEREE ACQUIRES THIS NOTE (OR ANY INTEREST HEREIN) THROUGH AND INCLUDING THE DATE ON WHICH SUCH PURCHASER OR TRANSFEREE DISPOSES OF THIS NOTE (OR ANY INTEREST HEREIN) THAT EITHER (A) IT IS NOT, AND IS NOT ACTING ON BEHALF OF OR USING THE ASSETS OF, AN "EMPLOYEE BENEFIT PLAN", AS DEFINED IN SECTION 3(3) OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED ("ERISA") THAT IS SUBJECT TO THE FIDUCIARY RESPONSIBILITY PROVISIONS OF TITLE I OF ERISA, A PLAN SUBJECT TO SECTION 4975 OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "CODE"), AN ENTITY WHOSE UNDERLYING ASSETS INCLUDE ASSETS OF ANY SUCH EMPLOYEE BENEFIT PLAN OR PLAN OR A GOVERNMENTAL OR OTHER PLAN WHICH IS SUBJECT TO ANY FOREIGN, FEDERAL, STATE OR LOCAL LAW THAT IS SUBSTANTIALLY SIMILAR TO THE PROHIBITED TRANSACTION PROVISIONS OF SECTION 406 OF ERISA OR SECTION 4975 OF THE CODE OR (B) ITS ACQUISITION, HOLDING (INCLUDING, WITHOUT LIMITATION, THE EXERCISE OF RIGHTS HEREUNDER) AND

Confidential Treatment Requested by Ambac

AMB-V_00045277

DISPOSITION OF THIS NOTE (OR ANY INTEREST HEREIN) WILL NOT CONSTITUTE OR RESULT IN A NON-EXEMPT PROHIBITED TRANSACTION UNDER SECTION 406 OF ERISA OR SECTION 4975 OF THE CODE (OR, IN THE CASE OF A GOVERNMENTAL OR OTHER PLAN, A VIOLATION OF ANY SUBSTANTIALLY SIMILAR NON-U.S., FEDERAL, STATE OR LOCAL LAW).

The following additional legend will appear on Class Q Combination Notes represented by a Temporary Regulation S Global Note or Regulation S Global Note:

THE ACQUISITION OF THIS NOTE BY, OR ON BEHALF OF OR USING THE ASSETS OF, A BENEFIT PLAN INVESTOR (INCLUDING, WITHOUT LIMITATION, AN INSURANCE COMPANY GENERAL ACCOUNT) IS PROHIBITED. EACH PURCHASER OR TRANSFEREE OF THIS NOTE (OR ANY INTEREST HEREIN) WILL BE DEEMED TO HAVE REPRESENTED AND AGREED AT THE TIME OF ITS PURCHASE OR ACQUISITION AND THROUGHOUT THE PERIOD OF ITS HOLDING AND DISPOSITION OF THIS NOTE (OR ANY INTEREST HEREIN) THAT IT (1) IS NOT, AND IS NOT ACTING ON BEHALF OF OR USING THE ASSETS OF, A BENEFIT PLAN INVESTOR (INCLUDING, WITHOUT LIMITATION, AN INSURANCE COMPANY GENERAL ACCOUNT) AND (2) IF IT IS A GOVERNMENTAL, CHURCH, NON-U.S. OR OTHER PLAN THAT IS SUBJECT TO ANY NON-U.S., FEDERAL, STATE OR LOCAL LAW THAT IS SUBSTANTIALLY SIMILAR TO THE PROHIBITED TRANSACTION PROVISIONS OF SECTION 406 OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED ("ERISA") OR SECTION 4975 OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "CODE"), ITS ACQUISITION, HOLDING AND DISPOSITION OF THIS NOTE (OR ANY INTEREST HEREIN) WILL NOT CONSTITUTE OR RESULT IN A VIOLATION OF ANY SUCH SUBSTANTIALLY SIMILAR LAW. NO TRANSFER OF THIS NOTE (OR ANY INTEREST HEREIN) MAY BE MADE (AND NEITHER THE ISSUER, THE INCOME NOTE PAYING AGENT NOR THE INCOME NOTE REGISTRAR WILL RECOGNIZE ANY SUCH TRANSFER) IF, AFTER GIVING EFFECT TO SUCH TRANSFER, THIS NOTE (OR ANY INTEREST HEREIN) WOULD BE HELD BY A BENEFIT PLAN INVESTOR (INCLUDING, WITHOUT LIMITATION, AN INSURANCE COMPANY GENERAL ACCOUNT). ACCORDINGLY, AN INVESTOR IN THIS NOTE MUST BE PREPARED TO BEAR THE ECONOMIC RISK OF THE INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

"BENEFIT PLAN INVESTOR" IS DEFINED IN SECTION 3(42) OF ERISA TO MEAN (I) ANY "EMPLOYEE BENEFIT PLAN" (AS DEFINED IN SECTION 3(3) OF ERISA) THAT IS SUBJECT TO THE FIDUCIARY RESPONSIBILITY PROVISIONS OF TITLE I OF ERISA, (II) ANY "PLAN" TO WHICH SECTION 4975 OF THE CODE APPLIES AND (III) ANY ENTITY WHOSE UNDERLYING ASSETS INCLUDE PLAN ASSETS BY REASON OF SUCH AN EMPLOYEE BENEFIT PLAN'S OR PLAN'S INVESTMENT IN SUCH ENTITY.

The following additional legend will appear on Class Q Combination Notes that are Certificated Notes:

THE ACQUISITION OF THIS NOTE BY, OR ON BEHALF OF OR USING THE ASSETS OF, A BENEFIT PLAN INVESTOR (INCLUDING, WITHOUT LIMITATION, AN INSURANCE COMPANY GENERAL ACCOUNT) IS PROHIBITED. EACH PURCHASER OR TRANSFEREE OF THIS NOTE (OR ANY INTEREST HEREIN) WILL BE REQUIRED TO REPRESENT AND AGREE AT THE TIME OF ITS PURCHASE OR ACQUISITION AND THROUGHOUT THE PERIOD OF ITS HOLDING AND DISPOSITION OF THIS NOTE (OR ANY INTEREST HEREIN) THAT (1) IT IS NOT, AND IS NOT ACTING ON BEHALF OF OR USING THE ASSETS OF, A BENEFIT PLAN INVESTOR (INCLUDING, WITHOUT LIMITATION, AN INSURANCE COMPANY GENERAL ACCOUNT) AND (2) IF IT IS A GOVERNMENTAL, CHURCH, FOREIGN OR OTHER PLAN THAT IS SUBJECT TO ANY NON-U.S., FEDERAL, STATE OR LOCAL LAW THAT IS SUBSTANTIALLY SIMILAR TO THE PROHIBITED TRANSACTION PROVISIONS OF SECTION 406 OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED ("ERISA") OR SECTION 4975 OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "CODE"), ITS ACQUISITION, HOLDING AND DISPOSITION OF THIS NOTE (OR ANY INTEREST HEREIN) WILL NOT CONSTITUTE OR RESULT IN A VIOLATION OF ANY SUCH SUBSTANTIALLY SIMILAR LAW. NO TRANSFER OF THIS NOTE (OR ANY INTEREST HEREIN) MAY BE MADE (AND NEITHER THE ISSUER, THE INCOME NOTE PAYING AGENT NOR THE INCOME NOTE REGISTRAR WILL RECOGNIZE ANY SUCH TRANSFER) IF, AFTER GIVING EFFECT TO SUCH TRANSFER, THIS NOTE (OR ANY INTEREST HEREIN) WOULD BE HELD BY A BENEFIT PLAN INVESTOR (INCLUDING, WITHOUT LIMITATION,

Confidential Treatment Requested by Ambac

AMB-V_00045278

AN INSURANCE COMPANY GENERAL ACCOUNT).  ACCORDINGLY, AN INVESTOR IN THIS NOTE MUST BE PREPARED TO BEAR THE ECONOMIC RISK OF THE INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

"BENEFIT PLAN INVESTOR" IS DEFINED IN SECTION 3(42) OF ERISA TO MEAN (I) ANY "EMPLOYEE BENEFIT PLAN" (AS DEFINED IN SECTION 3(3) OF ERISA) THAT IS SUBJECT TO THE FIDUCIARY RESPONSIBILITY PROVISIONS OF TITLE I OF ERISA, (II) ANY "PLAN" TO WHICH SECTION 4975 OF THE CODE APPLIES AND (III) ANY ENTITY WHOSE UNDERLYING ASSETS INCLUDE PLAN ASSETS BY REASON OF SUCH AN EMPLOYEE BENEFIT PLAN'S OR PLAN'S INVESTMENT IN SUCH ENTITY.

*Initial Investors and Transferees of Interests in Rule 144A Global Notes and/or Certificated Notes*

Each initial investor in, and subsequent transferee of, Secured Notes or Class Q Combination Notes represented by (A) an interest in a Rule 144A Global Note will be deemed to have represented and agreed, or (B) a Certificated Note will be required to represent and agree in writing, as follows:

(i)     It (A) is (x) a QIB and is acquiring the Notes in reliance on the exemption from Securities Act registration provided by Rule 144A thereunder or (y) only with respect to any Class B Note, Class C Note or Class Q Combination Note, a QIB or an Accredited Investor purchasing for its own account (*provided* that, in the case of any transfer pursuant to this subclause (y), the transferor or the transferee has provided such certifications, legal opinions or other information to each of the Trustee and the Issuer that the Issuer may reasonably require to confirm that such transfer may be made pursuant to an exemption from registration under the Securities Act), (B) is a QP and (C) understands the Secured Notes or Class Q Combination Notes will bear the legend set forth above and be represented by either one or more Rule 144A Global Notes or one or more Certificated Notes, as applicable.  In addition, it represents and warrants that it (1) was not formed for the purpose of investing in either of the Co-Issuers (except when each beneficial owner of the purchaser is a QP), (2) has received the necessary consent from its beneficial owners if the purchaser is a private investment company formed before April 30, 1996, (3) is not a broker-dealer that owns and invests on a discretionary basis less than U.S.$25,000,000 in securities of unaffiliated issuers, (4) is not a pension, profit sharing or other retirement trust fund or plan in which the partners, beneficiaries or participants, as applicable, may designate the particular investments to be made, and in a transaction that may be effected without loss of any applicable Investment Company Act exemption, (5) will provide notice to any subsequent transferee of the transfer restrictions provided in the legend, (6) will hold and transfer Secured Notes or Class Q Combination Notes in an amount of not less than the applicable minimum denominations specified in the Indenture for it or for each account for which it is acting, (7) will provide the Issuer and Trustee from time to time such information as it may reasonably request in order to ascertain compliance with this paragraph (i) and (8) the investor understands that the Issuer may receive a list of participants holding positions in its securities from one or more book-entry depositories.

(ii)    It understands that the Secured Notes and Class Q Combination Notes have been offered only in a transaction not involving any public offering in the United States within the meaning of the Securities Act, the Secured Notes and Class Q Combination Notes have not been and will not be registered under the Securities Act, and, if in the future it decides to offer, resell, pledge or otherwise transfer the Secured Notes or Class Q Combination Notes, such Secured Notes or Class Q Combination Notes may be offered, resold, pledged or otherwise transferred only in accordance with the provisions of the Indenture and the legend on such Secured Notes or Class Q Combination Notes.  It acknowledges that no representation is made as to the availability of any exemption under the Securities Act or any state securities laws for resale of the Secured Notes or Class Q Combination Notes.

(iii)   In connection with the purchase of the Secured Notes or Class Q Combination Notes (*provided* that no such representations are made with respect to the Manager by any Affiliate of the Manager or any account advised or managed by the Manager):  (a) none of the Co-Issuers is acting as a fiduciary or financial or investment advisor for such initial investor or transferee; (b) such initial investor or transferee is not relying (for purposes of making any investment decision or otherwise) upon any advice, counsel or representations (whether written or oral) of the Co-Issuers, the Manager, the Initial Purchaser or

119

Confidential Treatment Requested by Ambac

the Placement Agent or any of their agents (in their capacities as such), other than any statements in a current offering circular for such Secured Notes and Class Q Combination Notes and any representations expressly set forth in a written agreement with such party; (c) such initial investor or transferee has consulted with its own legal, regulatory, tax, business, investment, financial and accounting advisers to the extent it has deemed necessary and has made its own investment decisions based upon its own judgment and upon any advice from such advisers as it has deemed necessary and not upon any view expressed by the Co-Issuers, the Manager, the Initial Purchaser or the Placement Agent; (d) such initial investor or transferee's purchase of the Secured Notes or Class Q Combination Notes will comply with all applicable laws in any jurisdiction in which it resides or is located; (e) such initial investor or transferee is acquiring the Secured Notes or Class Q Combination Notes as principal solely for its own account for investment and not with a view to the resale, distribution or other disposition thereof in violation of the Securities Act; (f) such initial investor or transferee has made investments prior to the date hereof and was not formed solely for the purpose of investing in the Secured Notes or Class Q Combination Notes; (g) such initial investor or transferee is not a (1) partnership, (2) common trust fund or (3) special trust, pension, profit sharing or other retirement trust fund or plan in which the partners, beneficiaries or participants may designate the particular investments to be made; (h) such initial investor or transferee may not hold any Secured Notes or Class Q Combination Notes for the benefit of any other Person, it will at all times be the sole beneficial owner thereof for purposes of the Investment Company Act and all other purposes and it will not sell participation interests in the Secured Notes or the Class Q Combination Notes or enter into any other arrangement pursuant to which any other Person will be entitled to a beneficial interest in the distributions on the Secured Notes or the Class Q Combination Notes; (i) all Notes or Class Q Combination Notes and other investment securities (together with any other securities of the Co-Issuers) purchased and held directly or indirectly by such initial investor or transferee have a value in the aggregate of no more than 40% of its total assets or capital (exclusive of government securities and cash items) on an unconsolidated basis; and (j) it is a sophisticated investor and is purchasing the Secured Notes or Class Q Combination Notes with a full understanding of all of the terms, conditions and risks thereof, and it is capable of assuming and willing to assume those risks.

(iv)     In connection with the purchase of the Secured Notes, on each day from the date on which it acquires the Secured Notes (or any interest therein) through and including the date on which it disposes of its interests in such Secured Note, that either (a) it is not, and is not acting on behalf of, or using the assets of, a Plan subject to Title I of ERISA or Section 4975 of the Code or a governmental or other plan which is subject to any non-U.S., Federal, state or local law that is substantially similar to Section 406 of ERISA or Section 4975 of the Code or (b) its acquisition, holding (including, without limitation, the exercise of rights thereunder) and disposition of the Secured Note (or any interest therein) will not constitute or result in a non-exempt prohibited transaction under Section 406 of ERISA or Section 4975 of the Code (or, in the case of a governmental or other plan, a violation of any substantially similar non-U.S., Federal, state or local law).

(v)     In connection with the purchase of the Class Q Combination Notes, on each day from the date on which it acquires the Class Q Combination Notes (or any interest therein) through and including the date on which it disposes of its interests in such Class Q Combination Note, that either (1) it is not, and is not acting on behalf of, or using the assets of a Benefit Plan Investor (including, without limitation, an insurance company general account) and (2) if it is a governmental, church, foreign or other plan that is subject to any non-U.S., Federal, state or local law that is substantially similar to the prohibited transaction provisions of Section 406 of ERISA or Section 4975 of the Code, its acquisition, holding and disposition of such Note (or any interest therein) will not constitute or result in a violation of any such substantially similar law. It understands that no transfer of any Class Q Combination Notes may be made (and none of the Issuer or the Trustee will recognize any such transfer) if, after giving effect to such transfer, such Class Q Combination Note would be held by a Benefit Plan Investor (including, without limitation, an insurance company general account). Accordingly, it understands that an investor in the Class Q Combination Notes must be prepared to bear the economic risk of the investment for an indefinite period of time. "Benefit Plan Investor" is defined in Section 3(42) of ERISA to mean (a) any "employee benefit plan" (as defined in Section 3(3) of ERISA) that is subject to the fiduciary responsibility requirements of Title I of ERISA (b) any "plan" to which Section 4975 of the Code applies and (c) any entity whose underlying assets include plan assets by reason of such an employee benefit plan's or plan's investment in such entity.

Confidential Treatment Requested by Ambac

AMB-V_00045280

(vi)    It understands that the Indenture permits the Issuer to demand that (x) any Holder of Rule 144A Global Notes who is determined not to be both a QIB and a QP at the time of acquisition of such Notes, (y) any Holder of Certificated Notes representing Secured Notes or Class Q Combination Notes who is determined not to be both a QIB or an Accredited Investor and a QP at the time of acquisition of such Secured Notes or Class Q Combination Notes, to sell the Secured Notes or Class Q Combination Notes (A) to a Person who will take delivery in the form of an interest in a Rule 144A Global Note and who is both a QIB and a QP in a transaction meeting the requirements of Rule 144A, (B) to a Person who will take delivery in the form of a Certificated Note and who is both a QIB or an Accredited Investor and a QP in a transaction meeting the requirements of an applicable exemption from the registration requirements of the Securities Act or (C) to a Person who will take delivery in the form of an interest in a Temporary Regulation S Global Note or Regulation S Global Note and who is not a U.S. Person in a transaction meeting the requirements of Regulation S and, if the Holder does not comply with such demand within 30 days thereof, the Issuer may sell such Holder's interest in the Secured Note or Class Q Combination Note on such terms as the Issuer may choose.

(vii)    It acknowledges that it is its intent and that it understands it is the intent of the Issuer that, for purposes of United States Federal income, state and local income and franchise tax and any other income taxes, the Issuer will be treated as a corporation, the Secured Notes will be treated as indebtedness of the Issuer, and the Income Notes will be treated as equity in the Issuer; it agrees to such treatment and agrees to take no action inconsistent with such treatment.

(viii)    It is aware that, except in the case of Certificated Notes and as otherwise provided in the Indenture, the Notes being sold to it will be represented by one or more Rule 144A Global Notes, and that beneficial interests therein may be held only through DTC or one of its nominees, as applicable.

(ix)    It agrees that it will not offer or sell, transfer, assign, or otherwise dispose of any Secured Notes or Class Q Combination Notes or any interest therein except (x) pursuant to an exemption from, or in a transaction not subject to, the registration requirements of the Securities Act and any applicable state securities laws or the applicable laws of any other jurisdiction and (y) in accordance with the provisions of the Indenture, to which provisions it agrees it is subject.

(x)    It understands that the Co-Issuers, the Trustee, the Initial Purchaser, the Placement Agent, the Manager, their respective Affiliates and their counsel will rely upon the accuracy and truth of the foregoing representations, and it hereby consents to such reliance.

(xi)    It will provide notice to each Person to whom it proposes to transfer any interest in the Secured Notes or Class Q Combination Notes of the transfer restrictions and representations set forth in the Indenture, including the Exhibits referenced therein.

(xii)    If it is acquiring the Secured Notes or Class Q Combination Notes from an existing Holder, it has satisfied and will satisfy all applicable registration and other requirements of the FRB in connection with its acquisition of the Secured Notes or Class Q Combination Notes.

*Initial Investors and Transferees of Interests in Regulation S Global Notes*

Each initial investor in, and subsequent transferee of, Secured Notes or Class Q Combination Notes represented by an interest in a Temporary Regulation S Global Note or a Regulation S Global Note will be deemed to have made the representations set forth in clauses (ii), (iii), (iv), (v), (vii), (ix), (x) and (xi) above under "Purchase and Transfer Restrictions—Initial Investors and Transferees of Interests in Rule 144A Global Notes and/or Certificated Notes" and will be deemed to have further represented and agreed as follows:

(i)    It is aware that the sale of Secured Notes or Class Q Combination Notes to it is being made in reliance on the exemption from registration provided by Regulation S and understands that the Secured Notes or Class Q Combination Notes offered in reliance on Regulation S will bear the legend set forth above and be represented by one or more Temporary Regulation S Global Notes or Regulation S Global Notes. The Secured Notes or Class Q Combination Notes so represented may not at any time be held by or on behalf of U.S. Persons as defined in Regulation S. The purchaser and each beneficial owner

121

-AMB-V_00045281

of the Secured Notes or Class Q Combination Notes that it holds is not, and will not be, a U.S. Person as defined in Regulation S or a U.S. resident within the meaning of the Investment Company Act, and its purchase of the Secured Notes or Class Q Combination Notes will comply with all applicable laws in any jurisdiction in which it resides or is located.

(ii)     Such beneficial owner, if it is not a "U.S. person" as defined in Section 7701(a)(30) of the Code, is not acquiring any Secured Note or Class Q Combination Note as part of a plan to reduce, avoid or evade United States Federal income taxes owed, owing or potentially owed or owing and further, if it is acquiring, directly or in conjunction with affiliates, more than 33⅓% of the aggregate outstanding amount of the Non-Co-Issued Notes it is not an Affected Bank. "Affected Bank" means a "bank" for purposes of Section 881 of the Code (including an entity controlled by such bank or acting on behalf of such bank) where such bank neither (x) meets the definition of a U.S. person (under Section 7701(a)(30) of the Code nor (y) is entitled to the benefits of an income tax treaty with the United States under which withholding taxes on interest payments made by obligors resident in the United States to such bank are reduced to 0%.

(iii)     The purchaser understands that the Indenture permits the Issuer to demand that any Holder of Temporary Regulation S Global Notes or Regulation S Global Notes who is determined to be a U.S. Person to sell the Secured Notes or Class Q Combination Notes (A) to a Person who is not a U.S. Person in a transaction meeting the requirements of Regulation S or (B) to a Person who will take delivery of the Holder's Temporary Regulation S Global Notes or Regulation S Global Notes, as applicable, in the form of (1) an interest in a Rule 144A Global Note, who is both a QIB and a QP or (2) a Certificated Note, who is both a QIB or an Accredited Investor and a QP, in each case in a transaction meeting the requirements of Rule 144A or another applicable exemption from the registration requirements of the Securities Act and, if the Holder does not comply with such demand within 30 days thereof, the Issuer may sell such Holder's interest in the Secured Note or Class Q Combination Note on such terms as the Issuer may choose.

(iv)     It is aware that, except as otherwise provided in the Indenture, the Secured Notes or Class Q Combination Notes being sold to it will be represented by one or more Temporary Regulation S Global Notes or Regulation S Global Notes, and that beneficial interests therein may be held only through Euroclear and Clearstream.

(v)     A Holder of a beneficial interest in a Temporary Regulation S Global Note must provide Euroclear or Clearstream or the participant organization through which it holds such interest, as the case may be, with a certificate certifying that the beneficial owner of the interest in the Temporary Regulation S Global Note is a non-U.S. Person, and Euroclear or Clearstream, as the case may be, must provide to the Paying Agent a certificate to such effect, prior to (A) the payment of interest or principal with respect to such Holder's beneficial interest in the Temporary Regulation S Global Note and (B) any exchange of such beneficial interest for a beneficial interest in a Regulation S Global Note.

(vi)     The transferee and each beneficial owner of the Secured Notes or Class Q Combination Notes does not have its principal place of business in any Federal Reserve District of the FRB, or it has satisfied and will satisfy all applicable registration and other requirements of the FRB in connection with its acquisition of the Notes.

**Income Notes**

*Legend*

Unless determined otherwise by the Issuer in accordance with applicable law and so long as the Income Notes are Outstanding, the certificates in respect of the Income Notes will bear a legend substantially set forth below:

THE INCOME NOTES REPRESENTED HEREBY HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"). ANY STATE SECURITIES LAWS IN THE UNITED STATES OR THE SECURITIES LAWS OF ANY OTHER JURISDICTION AND THE ISSUER HAS NOT BEEN REGISTERED UNDER THE

122

Confidential Treatment Requested by Ambac