UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

U.S. SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

BRIAN H. STOKER,

Defendant

Case No. 11-CIV-7388 (JSR)

DEFENDANT BRIAN H. STOKER'S SUPPLEMENTAL BRIEF IN SUPPORT OF HIS MOTION IN LIMINE NO. 6 TO EXCLUDE EVIDENCE OF HIS COMPENSATION

Pursuant to the Court's instructions during the July 12, 2012 Pretrial Hearing, Mr. Stoker respectfully submits this supplemental brief in support of his motion in limine no. 6, to exclude evidence of or reference to his compensation.

Even if the Court determines that Mr. Stoker's compensation is relevant to the SEC's claims, it should exclude evidence of or reference to the *amount* of such compensation under Rule 403.  The SEC intends to argue to the jury that Mr. Stoker made over two million dollars in 2007 as a result of actions that it claims caused investors in Class V III to lose hundreds of millions of dollars.  This would severely prejudice Mr. Stoker.  Even under ordinary circumstances, there is a substantial risk that learning a defendant made millions of dollars in salary and bonuses would distract the jury from the material facts and cause it to view the defendant more negatively.  *United States v. Stahl*, 616 F.2d 30, 32-33 (2d Cir. 1980) (reversible error for prosecutor to appeal to juror prejudices by repeatedly referring to defendant's wealth, where financial condition of defendant not directly relevant to the charges); *see also United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 239 (1940) ("[A]ppeals to class prejudice are highly improper and cannot be condoned and trial courts should ever be alert to prevent them."). This risk is magnified by the current circumstances: this case arises from the unprecedented collapse in the housing market, and it is being tried at a time when the economic repercussions of that collapse and the subsequent recession are being felt widely and when anti-Wall Street sentiment is pervasive.  *See Stahl*, 616 F.2d at 32-33.  Although the SEC has represented that it will not attempt to tap into the jurors' anger and frustration by suggesting any causal link between the collapse and Mr. Stoker, Citigroup, or Class V III, evidence and argument about how much Mr. Stoker made during this time, and how this related to investor losses, will likely do just that.

The arguments and evidence the SEC intends to use regarding the amount of Mr. Stoker's compensation will also cause confusion and significant delay. The SEC will provide the jury with only a part of the picture: just as the SEC's claim that Citigroup made millions from Class V III ignores that, overall, Citigroup lost *billions* in related investments, its claim that Mr. Stoker was guaranteed $2.4 million in total compensation for 2007 ignores that the actual compensation that Mr. Stoker eventually realized was substantially less. The defense will be required to establish how much Mr. Stoker actually made, which will require a complicated presentation regarding the percentage of his compensation that was Citigroup stock versus cash, the restrictions that applied to this stock, how and when this stock vested, and the value of this stock after it experienced substantial losses.

All of this is unnecessary. Under the Court's prior orders, the SEC can meet the applicable burden under Section 17(a)(2) merely by showing that *Citigroup* obtained money or property, or, alternatively, that Mr. Stoker obtained *any* money or property—regardless of the amount. To the extent that the amount of Mr. Stoker's compensation has some probative value as to negligence generally, this value is far outweighed by the risk of prejudice, confusion, and wasted time, described above.

Finally, if the Court does not exclude evidence of the amount of Mr. Stoker's compensation under Rule 403, it should at least require under Rule 104(b) that the SEC establish a nexus between Mr. Stoker's compensation and Class V III before introducing such evidence. The evidence shows that salaries at Citigroup were "fixed by Citigroup policies, depending on rank." Dooley Decl. in Supp. of MSJ, Ex. 2 at 145:15-16, ECF No. 46. And the SEC has conceded that Mr. Stoker's 2007 bonus was approved to match a competing employment offer and was guaranteed *prior* to Class V III's closing and could not be subsequently modified.

Def.'s Resp. to Pl.'s Counter-Statement of Undisputed Material Facts ¶¶ 34-37, ECF No. 51-1. Unless and until the SEC can establish an actual connection between alleged misstatements in connection with Class V III and money or property received by Mr. Stoker, it should not be allowed to admit evidence of the compensation amount.

Dated: July 15, 2012

Respectfully submitted,

By: *__/s/ John W. Keker__________________*

JOHN KEKER (*pro hac vice*)
JAN NIELSEN LITTLE (*pro hac vice*)
STEVEN K. TAYLOR (*pro hac vice*)
BROOK DOOLEY (*pro hac vice*)
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188
Email: jkeker@kvn.com
Email: jlittle@kvn.com
Email: staylor@kvn.com
Email: bdooley@kvn.com

Attorneys for Defendant
BRIAN H. STOKER

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 15, 2012.

*/s/ John W. Keker*
John W. Keker

**SERVICE LIST**
*Attorneys for Plaintiff*
*Securities and Exchange Commission:*

Jeffrey Infelise
Jane M. Peterson
Andrew Feller
Gina Twyman
Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549-4010
infelisej@sec.gov
petersonjme@sec.gov
fellera@sec.gov
twymang@sec.gov